*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0334P (6th Cir.)
File Name: 03a0334p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

THOMAS E. SUTHERLAND, et
al.,

    *Plaintiffs-Appellants,*

      *v.*

MICHIGAN DEPARTMENT OF
TREASURY, et al.,
    *Defendants-Appellees.*

No. 01-2052

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-73571—Avern Cohn, Senior District Judge.

Argued: June 18, 2003

Decided and Filed: September 18, 2003

Before: BOGGS and GILMAN, Circuit Judges;
MARBLEY, District Judge.[*]

_____

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

_____

## COUNSEL

**ARGUED:** Charles J. Porter, Clarkston, Michigan, for Appellants. Joseph E. Potchen, Richard P. Gartner, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Charles J. Porter, Clarkston, Michigan, for Appellants. Joseph E. Potchen, James Erwin Long, Susan Przekop-Shaw, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

_____

## OPINION

_____

    ALGENON L. MARBLEY, District Judge. This is a "reverse" race discrimination case brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (1991) ("Title VII"), 42 U.S.C. § 1983, and the Michigan Elliott-Larsen Civil Rights Act, M.C.L. 37.2102 *et seq.* Plaintiffs-Appellants, Thomas E. Sutherland and Nancy Karim, both Caucasian, brought suit alleging that they were denied promotions over less qualified minorities. They now appeal the district court's orders granting summary judgment to, and dismissing the claims against, Defendants-Appellees, and denying Plaintiffs-Appellants' motion for partial summary judgment.

    For the following reasons, we **AFFIRM** the rulings of the district court.

## I. BACKGROUND

### A. Facts

Plaintiff-Appellant Thomas E. Sutherland, Caucasian, began his employment with the Audit Division of the Michigan Department of Treasury on June 8, 1969. During his employment, Sutherland was promoted to Auditor 11, Auditor 12, and, eventually, in May 1996, he was appointed to acting Auditor Manager 14.[1] Plaintiff-Appellant Nancy Karim, also Caucasian, began her employment with the Audit Division of the Michigan Department of Treasury on January 3, 1984. Throughout her employment, she was promoted to Auditor 11, Auditor 12, and, in May 1996, she was appointed to the position of acting Auditor Manager 14.

On January 28, 1998, Audit Division Administrator David Husted issued a memorandum notifying Revenue Audit staff that a vacancy existed for an Auditor Manager 14 position at Treasury's Pontiac office, and that candidates interested in transferring into that position should respond by February 11, 1998. No one responded to the transfer memorandum by the posted deadline.

On April 17, 1998, Husted re-posted the Pontiac Auditor Manager 14 position. When the position was re-posted, Rosalind Robinson, an African-American who had worked for two years as an Auditor Manager 14 in Treasury's Detroit office, and who was eligible to transfer to the Pontiac position, submitted a transfer request. Robinson was permitted to make the lateral transfer into the Pontiac position without an interview.

On April 22, 1998, Plaintiff-Appellant Karim filed a grievance challenging the April 17, 1998 re-posting of the Pontiac Auditor Manager 14 position. In her statement of grievance, Karim indicated that the Audit Division's past practice was to post a position for transfer only once prior to its being filled. She stated that if no eligible transferees indicated their interest in the position by the posted deadline, then past practice dictated that the position be filled through the promotional process, not through a re-posting of the transfer position. Accordingly, Karim requested that Robinson's lateral transfer be rescinded, and that the Pontiac Auditor Manager 14 position be opened for competitive interviews.

In July 1998, Micheal Davis, Treasury's labor relations officer, issued a "step three" resolution to Karim's grievance. Davis acknowledged that Treasury's past practice after posting a job soliciting eligible candidates for transfer was to proceed with the promotion process if no interested or eligible employees responded in a timely manner. Davis also indicated that, while the written transfer policy did not prohibit a re-posting, such a re-posting was not in line with the division's normal application of the policy. Accordingly, Davis proposed the following resolution to Karim's grievance: (1) rescind Robinson's transfer to the Pontiac Auditor Manager 14 position; (2) open the position to the promotional process; and (3) allow Robinson to compete for the position along with other eligible candidates. Karim did not appeal Davis's resolution to her grievance.

By summer 1998, six Auditor Manager 14 positions became available in the Treasury's Audit Division, including the position in Pontiac that had been re-opened as a result of the resolution of Karim's grievance. Of the five positions in addition to the one in Pontiac, two were located in Detroit, two were located in Lansing, and one was located in Traverse City. Husted, who was responsible for overseeing the Auditor Manager 14 selection process, selected Defendant-

---

[1] At some point within the last decade, the auditor positions were renumbered, so that the various positions were designated according to the digits set forth above, rather than by roman numerals, as they had been previously. Throughout this opinion, we will refer to the job titles as they are currently used.

Appellee Anthony Taylor to chair the interview panel to fill the various Auditor Manager 14 positions. Taylor, in turn, contacted Defendants-Appellees Jane Osburn, Auditor Manager 14 from the Grand Rapids office, and Larry Collar, Department Specialist 14, Office of Quality Management, to assist him in interviewing eligible candidates for the positions. Husted approved Taylor's selection of Osborn and Collar to serve on the interview panel.

Once the interview panel was established, the panel members developed written and oral interview questions and model answers. The interview panel also created past performance evaluation questions. Husted and Deputy Audit Division Administrator Stan Borowski reviewed and approved the panel's oral and written questions, model answers, and past performance questions.

In May 1998, Raymond Heriford, Administrator of Treasury's Human Resources Division, sent letters to eligible Treasury employees notifying them that Treasury was filling permanent Auditor Manager 14 positions in Detroit, Lansing, and Traverse City. After the resolution of Karim's grievance as set forth above, employees were also notified of the interviews to be held for the Auditor Manager 14 position in Pontiac. The letters to employees set forth the minimum requirements for eligibility for the Auditor Manager 14 positions. In particular, a candidate had to have a B.S. or B.A. degree with a major in accounting, and two years of professional experience in an Auditor 11 position or in a position of equivalent responsibility. Interested candidates were asked to submit a pre-employment application, pre-employment authorization and certification, a written exercise, and a detailed résumé.

Before scheduling interviews for the six vacant positions, the interview panel members reviewed, scored, and ranked the candidates' written responses in accordance with the pre-approved guidelines. Candidates with scores of seventy percent or above were given oral interviews. In August 1998, twenty-six candidates were interviewed for the six available Auditor Manager 14 positions. Prior to the interviews, all candidates were asked to specify the locations where they were willing to work, and to rank their job preferences if they sought more than one position.

Candidates were scored on their oral interviews based on the pre-established model answers. Then, a background check was performed by asking each candidate's supervisor questions regarding the candidate's initiative, work habits, technical auditing ability, and leadership skills. The panel members then scored each candidate based on his or her past performance evaluation. Finally, the scores given to each candidate by each of the panel members were combined, and the candidates were ranked for the available positions based on their combined scores. After ranking the candidates, the interview panel made hiring recommendations to Husted for review and approval. Husted made one change in the recommendations, based on one applicant's employment preference. Then, each of the candidates selected was offered a position, and each accepted. Defendant-Appellee Alfinio Olivarez, Treasury's Equal Employment Opportunity Officer, reviewed and approved the foregoing hiring process.

During the August 1998 interviews, Plaintiff-Appellant Sutherland sought and interviewed for only the Traverse City Auditor Manager 14 position. In addition to Sutherland, Kimberly Knoll, a Caucasian female, and Braysley Famuwera, a black male, also interviewed for that position. Knoll was the highest scoring candidate for the Traverse City position. Knoll was also the highest scoring candidate for two other available positions, however, including the Lansing Field Office position, which she had ranked higher in preference than the Traverse City position. Knoll was offered and accepted the Lansing Field Office position. Famuwera was the second highest scoring candidate for the Traverse City position. Therefore, as a result of the hiring process set

forth above, Famuwera was offered and accepted the Auditor Manager 14 position in Traverse City.

Twenty individuals interviewed for the Pontiac Auditor Manager 14 position, including both Rosalind Robinson and Plaintiff-Appellant Karim. Robinson and Karim sought only the Pontiac position. Based on the combined scores of the interview panel members, the top four candidates for the Pontiac Auditor Manager 14 position were: (1) Rosalind Robinson, (2) Charles Wright, (3) Bonnie McWilliams, and (4) Nancy Karim, in that order. As the highest scoring candidate, Robinson was offered and accepted the Pontiac position.

### B. Procedural History

Based on the foregoing hiring decisions, on July 19, 1999, Sutherland and Karim brought suit under Title VII against the Michigan Department of Treasury, Mark Murray, the State Treasurer (collectively, "Treasury Defendants"), the Michigan Department of Civil Service, David Adamany, Rea Lee Chabot, Robert P. Hunter, Susan Grimes Munsell, all of whom are members of Michigan's Civil Service Commission, Mary Pollack, the former Equal Employment Opportunity and Affirmative Action Officer for the Civil Service Department, John F. Lopez, the State Personnel Director (collectively, "Civil Service Defendants"), and the State of Michigan. Before the Defendants answered the complaint, they all filed motions to dismiss, or alternatively, for summary judgment. On March 21, 2000, the district court issued a memorandum and order granting the Civil Service Defendants' motion to dismiss, as well as that of the State of Michigan. The district court also granted the Treasury Defendants' motion with respect to Defendant Murray, but denied their motion with respect to the Department of Treasury. Thus, the district court allowed Plaintiffs-Appellants to proceed on their Title VII claims against only the Department of Treasury.

On April 18, 2000, Plaintiffs-Appellants filed a one-count amended complaint against the Department of Treasury, alleging race discrimination in violation of Title VII. Subsequently, they filed a separate two-count complaint pursuant to 42 U.S.C. § 1983 and Michigan's Elliott-Larsen Civil Rights Act against Alfinio Olivarez, Treasury's Equal Employment Opportunity Officer, and Anthony Taylor, Jane Osborn, and Larry Collar, the members of the interview panel who determined the promotions at issue (collectively, included within the group designated "Treasury Defendants" above). On April 27, 2000, the second lawsuit was consolidated with the case now on appeal.

On May 22, 2000, Plaintiffs-Appellants filed a motion for partial summary judgment, through which they sought an order declaring that the Treasury Defendants' "past affirmative action," "racial and gender preferences in hiring and promotions," and "current *ad hoc* informal affirmative action" violate the Fourteenth Amendment to the United States Constitution, and Michigan's Elliott-Larsen Civil Rights Act. Subsequently, the Treasury Defendants filed a motion for summary judgment, arguing that the Plaintiffs had failed to demonstrate that race was considered in selecting candidates to fill the Auditor Manager 14 positions for which the Plaintiffs had applied.

On January 22, 2001, the district court issued a memorandum and order denying the Plaintiffs' motion for partial summary judgment. In that same order, the district court granted the Treasury Defendants' motion for summary judgment as to Sutherland, but denied the motion as to Karim. In light of its decision to grant summary judgment to the Treasury Defendants with respect to Sutherland, the district court also dismissed Defendants Taylor, Osborn, and Collar, the interview panel members, from the action. Thus, after the court's January 22, 2001 order, the only remaining issue in the case was Karim's race discrimination claim against Defendants Treasury and Olivarez.

On February 12, 2001, Defendants Treasury and Olivarez filed a motion for summary judgment as to Karim's remaining claim. On June 19, 2001, the district court entered a memorandum and order granting that motion based on the finding that, even if Robinson had not competed for the position, Karim still would not have been promoted. The district court issued an order of judgment that same day.

Plaintiffs-Appellants now appeal the district court's various orders dismissing, or granting summary judgment to, the Treasury Defendants, the Civil Service Defendants, and the State of Michigan, as well as the district court's order denying Plaintiffs-Appellants' motion for partial summary judgment.

## II. DISCUSSION

### A. Dismissal of Civil Service Defendants[2]

Plaintiffs-Appellants brought claims against the Civil Service Defendants for violation of Title VII and 42 U.S.C. § 1983 based on their assertion that the Civil Service Defendants control all conditions of state employment, and, therefore, must have been the source of the decision to implement certain affirmative action devices. We conclude that the district court properly dismissed the Civil Service Defendants as parties to this matter based on the finding that those Defendants are not Plaintiffs-Appellants' employer under Title VII.

---

[2]As indicated above, the "Civil Service Defendants" include the Michigan Department of Civil Service, David Adamany, Rea Lee Chabot, Robert P. Hunter, Susan Grimes Munsell, all of whom are members of Michigan's Civil Service Commission, Mary Pollack, the former Equal Employment Opportunity and Affirmative Action Officer for the Civil Service Department, and John F. Lopez, the State Personnel Director.

### 1. Standard of Review

Prior to filing their answer, the Civil Service Defendants filed a motion to dismiss or, in the alternative, for summary judgment. The district court granted that motion, but it is unclear whether the court granted it as a motion to dismiss or as a motion for summary judgment. In either case, the district court's decision is subject to *de novo* review by this Court. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 465 (6th Cir. 2002) (holding that a decision granting summary judgment is subject to *de novo* review by this Court); *Stanek v. Greco*, 323 F.3d 476, 478 (6th Cir. 2003) (stating that this Court reviews *de novo* a decision of the district court granting a motion to dismiss for failure to state a claim).

### 2. Department of Treasury as Sole Employer

Title VII applies only to "employers." 42 U.S.C. § 2000e-2. Plaintiffs-Appellants argue that the Civil Service Defendants can be liable as their employers under Title VII by virtue of the fact that they retain the authority to regulate all conditions of state employment, including whether such employment should be free from racial preferences.

The Michigan Civil Service Commission has plenary authority to regulate all conditions of employment in the state civil service, to make rules and regulations covering personnel transactions, and to determine the qualifications of all candidates for state positions. *See Davis v. Dep't of Corr.*, 651 N.W.2d 486, 489 (Mich. Ct. App. 2002). The State Personnel Director administers these powers of the Commission through his position as head of the Department of Civil Service by issuing regulations and procedures to implement the Commission's rules. The Department of Civil Service, however, is an entity that is separate and distinct from the Civil Service Commission. *Id.*

Individual state agencies, such as Treasury, possess the authority to create and abolish the civil service positions within their own agencies. In addition, each agency, through its director or the director's agents, retains the sole authority to appoint, hire, fire, and promote eligible employees to positions within the agency in accordance with the rules promulgated by the Commission. *Conlin v. Blanchard*, 745 F. Supp. 413, 415-16 (E.D. Mich. 1990), *aff'd*, 947 F.2d 944, 1991 WL 224081 (6th Cir. Oct. 31, 1991). Thus, although the Commission promulgates rules to identify and certify eligible candidates for vacant positions in the state departments, the decision-making authority with respect to selecting among particular applicants certified as eligible under the Commission's rules remains vested solely in the department itself. *Id.*

The determination of whether a particular entity is an employer of a Title VII plaintiff involves an examination of whether the alleged employer exercises control over the manner and means of the plaintiff's work. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992) (discussing the analysis employed to distinguish an independent contractor from an employee).[3] In light of the distinct roles of the various governmental entities set forth above, it is clear that the Department of Treasury has the authority to make key employment decisions, and exercises control over the manner and means of its employees' work, while the Civil Service Commission does not. Thus, the Civil Service Defendants could not have been held liable for any adverse employment actions that Plaintiffs-Appellants allegedly suffered because they are not Plaintiffs-Appellants' employer. Rather, as the

---

[3] Although *Darden* was an ERISA case, this Court has applied the holding in *Darden* to other statutes, including the ADA. *See Johnson v. City of Saline*, 151 F.3d 564, 568 (6th Cir. 1998). As we recognized in *Johnson*, *Darden* sets forth a rule of general applicability, and applies here.

appointing authority, only the Department of Treasury was their employer under Title VII.

Therefore, we **AFFIRM** the district court's order dismissing the Civil Service Defendants as parties to this matter on the ground that they were not Plaintiffs-Appellants' employer.

### B.  Dismissal of the State of Michigan

The only claim brought against the State of Michigan was a claim of employment discrimination in violation of Title VII. The district court dismissed the State of Michigan as a party to this action based on its determination that the State of Michigan was not the Plaintiffs-Appellants' employer. We conclude that dismissal of the State of Michigan was proper on that basis.

### 1.  Standard of Review

Although not explicit in the district court's opinion, the parties agree that the district court dismissed the State of Michigan as a Defendant pursuant to Federal Rule of Civil Procedure 21, which provides, in pertinent part, that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." This Court reviews a decision to drop a misjoined party pursuant to Rule 21 for abuse of discretion. *Letherer v. Alger Group, L.L.C.*, 328 F.3d 262, 266 (6th Cir. 2003). "Therefore, we affirm the dismissal of a party for misjoinder 'unless this court is left with a definite and firm conviction that the trial court committed a clear error of judgment.'" *Id.* at 266-67 (quoting *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578 (6th Cir. 1998)).

## 2. Department of Treasury as Sole Employer

As we recognized above, the Department of Treasury possesses the sole authority to appoint, hire, fire, and promote eligible employees to positions within that agency. Furthermore, it is the Department of Treasury that controls the manner and means by which its employees' work is accomplished. The State of Michigan did not, separate and apart from its Department of Treasury, employ the Plaintiffs-Appellants. Accordingly, it is the Department of Treasury alone, and not the State of Michigan, that is the employer of Plaintiffs-Appellants.

Therefore, we **AFFIRM** the district court's dismissal of the State of Michigan as a party on the ground that the State of Michigan was not the Plaintiffs-Appellants' employer under Title VII.

## C. Treasury Defendants' Motions for Summary Judgment

In all, the Treasury Defendants filed three dispositive motions. Plaintiffs-Appellants challenge the district court's initial order granting summary judgment to Defendant Murray, the district court's second order granting summary judgment to the Treasury Defendants with respect to Sutherland's claims, and the district court's third order granting summary judgment to the remaining Treasury Defendants with respect to Karim's claims.

## 1. Standard of Review

The district court's grant of summary judgment is subject to *de novo* review by this Court. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 465 (6th Cir. 2002) (citing *Darrah v. City of Oak Park*, 255 F.3d 301, 305 (6th Cir. 2001), and *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 554 (6th Cir. 1998)).

Accordingly, on appeal, we apply the same standard of review as that applied by the district court.

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001). In response, the non-moving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party, however, "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

## 2. Plaintiff Sutherland's Claims

Sutherland brought claims against the Treasury Defendants for "reverse" race discrimination in violation of 42 U.S.C. § 1983, Title VII, and Michigan's Elliott-Larsen Civil Rights Act. Sutherland's claims are based on his belief that the interview panel judges intentionally scored him lower than they scored Famuwera to conceal the fact that their decision with respect to the Traverse City promotion was based on race.

To state a claim for violation of 42 U.S.C. § 1983, the plaintiff must demonstrate that: (1) a person, (2) acting under color of state law, (3) deprived him of a federal right. *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 490 (6th Cir. 2002) (citation omitted). Here, Sutherland claims that the Treasury Defendants acted under color of state law to deprive him of his right to be free from racial discrimination, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. To succeed on a § 1983 claim of this kind, against a public employer for an equal protection violation, the plaintiff must show that the employer made an adverse employment decision "with a discriminatory intent and purpose." *Boger v. Wayne County*, 950 F.2d 316, 324-25 (6th Cir. 1991) (citations omitted). In analyzing the plaintiff's claim, the court is to rely on Title VII disparate treatment cases for guidance. *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000) ("Because both Title VII and § 1983 prohibit discriminatory employment practices by public employers, this court looks to Title VII disparate treatment cases for assistance in analyzing race discrimination in the public employment context under § 1983.") (citations

omitted). Therefore, all of Sutherland's claims shall be examined together.[4]

The analytical framework governing Title VII cases is well-established. First, the plaintiff must set forth a *prima facie* case, which gives rise to an inference of discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To set forth a *prima facie* case of discrimination based upon a failure to promote, a plaintiff must show: (1) that he is a member of a protected class; (2) that he applied and was qualified for a promotion; (3) that he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020-21 (6th Cir. 2000). The Sixth Circuit has adapted this four-prong test to cases of reverse discrimination, where a member of the majority is claiming discrimination on the basis of race. In such cases, to satisfy the first prong of the *prima facie* case, the plaintiff must "demonstrate 'background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002) (quoting *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985) (quoting *Parker v. Baltimore and Ohio R.R. Co.*, 652 F.2d 1012, 1017 (D.C. Cir. 1981))). To satisfy the fourth prong in such cases, the plaintiff must show that the defendant treated differently

---

[4] Claims under Michigan's Elliott-Larsen Civil Rights Act involve the same analysis as Title VII claims. *Thomas v. Autumn Woods Residential Health Care Facility*, 905 F. Supp. 414, 419 (E.D. Mich. 1995).

employees who were similarly situated but were not members of the protected class. *Id.*[5]

Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action at issue. *Burdine*, 450 U.S. at 253 (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804). When the burden shifts back to the plaintiff, although he must come forward with evidence that the defendant's reason for the employment action is false, he need not present independent evidence that the proffered reason is pretext for racial discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

### a. *Sutherland's* Prima Facie *Case*

The district court found that Sutherland set forth all of the elements necessary to establish a *prima facie* case of reverse race discrimination. On appeal, the parties do not dispute that Sutherland demonstrated that he was qualified for the Traverse City position, that he suffered an adverse employment decision, and that the promotion was given to someone outside Sutherland's racial class. Defendants-Appellees assert, however, that Sutherland failed to present sufficient evidence to demonstrate background circumstances that support the suspicion that the Treasury Department is the unusual employer that discriminates against the majority.

To satisfy the burden of demonstrating background circumstances that give rise to a suspicion of discrimination against the majority in employment, the plaintiff may present evidence of the defendants' unlawful consideration of race in employment decisions in the past. *Zambetti*, 314 F.3d at 256 (finding that such evidence "justifies a suspicion that incidents of capricious discrimination against whites because of their race may be likely"). Both at the trial level and on appeal, Plaintiffs-Appellants present significant evidence in the form of statistical data tending to show that in the years prior to the employment decisions at issue, the Treasury Department considered race in making employment decisions. Reviewing that evidence, the district court stated: "Plaintiffs include in their papers considerable statistical data regarding the Treasury Department's promotion and hiring patterns and vigorously assert that 'illegal racial and gender preferences have been rampant for years.'"

We agree with the district court's view that Plaintiffs-Appellants provided a substantial amount of statistical data relating to the Treasury Department's promotion and hiring patterns over the past few decades as they relate to race. For example, Plaintiffs-Appellants point out that in 1983, blacks held 11.5% of the auditor positions in Treasury, even though blacks represented only 5.2% of the qualified labor force in Michigan. In addition, they assert that, from 1980 through July 1989, protected class members, including racial minorities, females, and disabled people, represented seventy-seven percent of all new hires in the Audit Division of Treasury. Furthermore, Plaintiffs-Appellants claim that as recently as March 2000, a roster of the Audit Division indicated that protected class members held seventy-one percent of the auditor positions in the Michigan offices of the Audit Division. Specifically, the March 2000 roster indicates that black employees held twenty-nine percent of the Audit

---

[5]Michigan courts have adopted this form of the *prima facie* case for reverse discrimination claims brought under the Elliott-Larsen Civil Rights Act. *Allen v. Comprehensive Health Servs.*, 564 N.W.2d 914, 917 (Mich. Ct. App. 1997).

Division positions in Michigan, even though a 1990 census, the most recent census prior to the March 2000 roster, demonstrated that blacks represented only 7.7% of the qualified labor force in Michigan at that time. Based on this significant statistical evidence, we believe that Plaintiffs-Appellants at least raised a genuine issue of material fact with respect to whether background circumstances tended to show that Treasury is the "unusual employer who discriminates against the majority."[6]

Therefore, we conclude that Plaintiffs-Appellants raised a genuine issue of material fact with respect to whether they established a *prima facie* case of discrimination.

### b. Legitimate, Non-Discriminatory Reason

Having concluded that Plaintiffs-Appellants raised a genuine issue of material fact with respect to their *prima facie* case of discrimination, we now turn to the question of whether the Treasury Defendants established a legitimate, non-discriminatory reason for their employment decision.

We believe that the Treasury Defendants satisfied their burden of establishing a legitimate, non-discriminatory reason for their employment decision. Quite simply, the non-discriminatory reason for the decision to offer the Traverse City position to Famuwera was that he achieved an overall higher score than Sutherland on the interviews – 619.5, as compared to Sutherland's score of 604. This proffered reason is supported by Defendants-Appellees' assertion that all scoring for the interviews was valid, based on the pre-determined criteria.

---

[6]We rely on the statistics provided by Plaintiffs-Appellants only for the narrow conclusion that they demonstrate background circumstances sufficient to raise a genuine issue of material fact with respect to a *prima facie* case of discrimination against the majority.

The fact that Sutherland had worked with Treasury longer and at a higher level than Famuwera had does not negate the Defendants' legitimate, non-discriminatory reason for their employment decision. Despite having less experience, Famuwera received a higher total score than Sutherland based on the fact that he had more education than Sutherland and performed better than Sutherland during the oral interview process. During his deposition, even Sutherland conceded that "it was not one of [his] better interviews." Thus, Famuwera's higher total score is attributed, in part, to his higher score on the oral interview portion of the promotional process; Famuwera scored a 300, while Sutherland scored only 266.

Based on the fact that Famuwera received a higher total score for his interview than Sutherland did, and the fact that Famuwera was the highest scoring candidate for the Traverse City position other than Knoll, who was offered a position that she ranked more highly than the Traverse City position, we conclude that the Treasury Defendants set forth a legitimate, non-discriminatory reason for their decision to award the Traverse City position to Famuwera over Sutherland.

### c. Pretext

We now turn to the question of whether Sutherland raised a genuine issue of material fact with respect to whether the Defendants-Appellees' proffered reason for their employment decision was pretextual. If he did raise a genuine issue of material fact with respect to pretext, then summary judgment in favor of the Treasury Defendants was improper.

In support of his claim that the Defendants' proffered reason for their employment decision is pretextual, Sutherland asserts that he was objectively the better candidate for the promotion than Famuwera was. He points out, in particular, that he had sixteen years of experience as an Auditor 12

before he was appointed to the position of acting Auditor Manager 14 in May 1996, and that he scored in the top group on a prior mid-management examination. Famuwera, on the other hand, was an Auditor 11, had not yet achieved the level of Auditor 12, and scored only in the second group on a prior mid-management examination. Sutherland asserts that these differences indicate that the scores on the Education/Experience portion of the interviews – 11 for Sutherland and 10 for Famuwera – must have been manipulated based on race.

We do not believe this argument furthers Sutherland's position that the Treasury Defendants' non-discriminatory reason for their employment decision was pretextual. As discussed above, the Treasury Defendants acknowledged that Sutherland had greater experience than Famuwera, but explained that Famuwera's relatively high score was based on the fact that he had a more extensive educational background than Sutherland. Sutherland does not present evidence that refutes the truth of this explanation. Rather, he simply reiterates the fact that he had greater experience than Famuwera. In light of the Treasury Defendants' explanation, however, this is insufficient to raise a genuine issue of material fact with respect to whether the proffered reason was a pretext for a decision based on race.

Sutherland also claims that the decision to award the Traverse City position to Famuwera must have been based on a racial preference because, irrespective of the fact that he had less experience than Sutherland, Famuwera simply did not have enough experience for the Auditor Manager 14 position. Sutherland bases this argument on a memorandum that was written by Audit Division Administrator Joseph Tomczyk in 1988, which states that an individual must work for at least

two years as an Auditor 12 to be ready to assume the duties of an Auditor Manager 14.[7]

Sutherland's reference to the 1988 memorandum is likewise insufficient to raise a genuine issue of material fact with respect to the Treasury Defendants' non-discriminatory reason for their employment decision. Although the 1988 memorandum may have called for two years of experience as an Auditor 12 before beginning work as an Auditor Manager 14, the stated minimum requirements for the promotion in 1998 called for only two years of professional experience or the equivalent in responsibility to an Auditor 11, not an Auditor 12. That minimum requirement was clearly set forth in the letters that were distributed to all candidates eligible for the promotions, and was established before any employees applied for the promotions. At the time of the interviews, Famuwera had two years of experience as an Auditor 11. Thus, he met the experience requirement for the position.

Furthermore, Plaintiffs-Appellants have presented no evidence that the memorandum written by Tomczyk represented an official policy within Treasury. To the contrary, it appears to embody nothing more than his personal opinion as to what he believed constituted important work experience. Tomczyk, however, played no role in the 1998

---

[7]The memorandum, created in 1988, actually refers to the work necessary as a senior auditor VII to be ready to assume the duties of a IX level crew chief position. In the interim between the drafting of the memorandum and the promotions at issue, the positions within the Treasury Department were redesignated with new numbers. The district court apparently based one of its rulings on its finding that Plaintiffs-Appellants had not demonstrated that the positions referred to in the 1988 memorandum were, in fact, equivalent to the positions at issue in this matter. We do not address this issue, as we base our decision on Sutherland's failure to raise a genuine issue of material fact with respect to pretext. We assume that the positions referred to in the 1988 memorandum are, in fact, equivalent to the Auditor 12 and Auditor Manager 14 positions now at issue.

promotions. Therefore, his personal opinion regarding the type of experience that is important for the promotions at issue is irrelevant. Finally, even if the 1988 memorandum had stated an official policy for promotions to Auditor Manager 14, Plaintiffs-Appellants have failed to present any evidence that the policy remained unchanged during the ten years between the time the memorandum was written and the time of the promotions at issue. Indeed, the written minimum requirements for the 1998 promotions indicate that, if it had been an official policy in 1988, it was no longer in effect.

Third, Sutherland contends that the scores on the answers to the first written question must have been manipulated based on Famuwera's race. For the first written question, Sutherland received a combined score of 56 while Famuwera received a combined score of 88. Sutherland's total score for that question resulted from scores of 16 out of 32 from two of the interview panel members, Defendants Taylor and Osborn, and a score of 24 from Defendant Collar. Famuwera's total score for that question resulted from scores of 32 from Defendants Taylor and Osborn, and a score of 24 from Defendant Collar.[8] Sutherland asserts that his scores from Taylor and Osborn were objectively unreasonable, and demonstrate that the Treasury Defendants' proffered reason for the employment decision was pretext for a decision based on race.

In support of this assertion, Sutherland explains that he showed his answer to the first written question to Michael Steinman, an Auditor Manager 15, who was Sutherland's direct supervisor in Traverse City. Steinman also reviewed the answers of the four top scorers for that question, including Famuwera. Based on his review, Steinman testified during

---

[8]On appeal, Sutherland does not challenge the dismissal of Defendant Collar in light of the fact that he gave the same score to both Sutherland and Famuwera.

his deposition that he would have scored Sutherland at least as highly as Famuwera.

Sutherland also showed his answer to the first written question to Brenda Brougham, another Auditor Manager 15. Brougham formulated what she believed to be the proper criteria for evaluating the question, and then reviewed Sutherland's answer. She concluded that Sutherland's answer was entitled to a score of 80 to 91, as compared to Famuwera's 88. Subsequently, after reviewing the additional answers that were reviewed by Steinman, Brougham conducted another analysis, and determined that Sutherland's score of 56 was extremely low. Sutherland asserts that, together, Steinman's and Brougham's analyses demonstrate that, in actuality, his answer was as good as Famuwera's, and should have been scored accordingly, which would have resulted in a higher total interview score for Sutherland over Famuwera.

Like Sutherland's other arguments, we conclude that this argument fails to raise a genuine issue of material fact with respect to whether the Defendants' legitimate, non-discriminatory reason for their employment decision was pretext. Plaintiffs-Appellants are correct that, at first blush, the fact that two panel members gave Sutherland a score that was half of the score they gave to Famuwera appears suspicious. But this suspicion is eliminated when we recall that Famuwera was awarded his promotion based not on the score he received for one question, but based on his total score. Although Famuwera did, indeed, score significantly higher than Sutherland on the first question, Sutherland scored higher than Famuwera did on other questions. For example, although Sutherland scored lower on question one, his overall score on the written portion of the interview process was 8.5 points higher than Famuwera's score. This fact indicates that both Famuwera and Sutherland were simply scored by the judges as they saw appropriate, and then ranked based on their overall scores.

The fact that the interview panel members awarded different scores – even significantly different scores, at least with respect to question one – does not undermine the conclusion that the applicants were simply scored by the panel members as each saw appropriate based on the pre-determined criteria. Although they established model answers, the panel members were nonetheless asked to evaluate fairly subjective criteria for much of the promotion process. The fact that one interviewer might have disagreed with the evaluation of an answer accorded by another interviewer is not evidence that either based his or her evaluation on anything other than his or her honest assessment of the answer. Rather, it simply indicates that the two individuals disagree as to subjective factors, which one would expect might happen from time to time. Indeed, it is because we expect individuals to disagree with respect to subjective factors that we frequently employ more than one individual to evaluate subjective criteria, as the Treasury Defendants did here.[9]

Moreover, the fact that it was Knoll, a Caucasian woman, not Famuwera, who actually received the highest total score for the Traverse City position demonstrates that all candidates were simply scored based on the individual panel members' perceptions of the merits of the applicants' answers to each portion of the interview process. The position was ultimately offered to Famuwera simply because Knoll also received the highest score for another position, which she ranked higher

than the Traverse City position. To conclude that the interview panel members manipulated the scores to conceal the fact that they awarded the promotion to Famuwera based on his race would be to believe that the panel members determined how to achieve their desired result while still scoring Sutherland higher than Famuwera on some questions, and awarding the highest total score to Knoll. While we do not doubt the intelligence of the panel members, we find it difficult to believe that they possessed the mathematical sophistication, let alone the time, necessary to plan such an elaborately deceitful manner of scoring the candidates for the Auditor 14 positions.

Additionally, Sutherland's purported evidence in support of his position that the scores were skewed is to no avail. Broughan's notes were not submitted under oath, nor was her deposition ever taken. As such, her notes setting forth her opinion regarding Sutherland's answer amount to nothing more than inadmissible hearsay, which cannot be considered on a motion for summary judgment. *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) (holding that the court may not consider hearsay on a motion for summary judgment).

Furthermore, neither Steinman nor Broughan was involved in the 1998 Auditor Manager 14 decision-making process. During his deposition, Steinman admitted that he never spoke with any of the interview panel members about the interviews, he did not know the criteria used to grade the written questions, and he did not see the model answers. As such, he had no sound basis for evaluating the validity of Sutherland's score. Finally, Plaintiffs-Appellants have presented no evidence that either Steinman or Broughan had any first-hand information that Sutherland's score was deliberately lowered, or that race was a factor in scoring the candidates. Therefore, their opinions regarding Sutherland's score on his answer to the first question are insufficient to raise a genuine issue of material fact with respect to the

---

[9]Compare this situation to that which might arise during a figure skating competition judged by a panel of figure skating experts. If one judge were to award a particular skater a low score on presentation, which includes consideration of such subjective factors as choreography, flow, and musical interpretation, and all the other judges were to award higher scores, we would not presume that the lower scoring judge based his score on improper factors. Rather, we would recognize that judges evaluate subjective factors differently, and rely on the fact that the lower score would be balanced out by the higher scores awarded by the other judges.

Treasury Defendants' assertion that they assigned scores based on the pre-determined criteria and awarded the promotion based on those scores.

Viewed in its entirety, Sutherland's purported evidence that the scoring of the interviews for the Traverse City position was manipulated to disguise a decision based on affirmative action amounts to nothing more than unsupported speculation. His argument that the Treasury Defendants' decision was based on the employees' race appears to be grounded not in evidence, but in the outcome itself: the simple fact that he did not receive a promotion to which he felt entitled. This is not sufficient to raise a genuine issue of material fact with respect to the legitimate, non-discriminatory reason offered by the Treasury Defendants to explain their employment decision.

Accordingly, we **AFFIRM** the district court's ruling granting summary judgment to the Treasury Defendants with respect to Sutherland's claims of discrimination.

### 3. Plaintiff Karim's Claims

#### a. Merits of the Claims

Unlike Sutherland's claims, Karim's claim of racial discrimination is not based on the scoring of the candidates during the interviews for the promotions. Rather, her claim is based on her assertion that Rosalind Robinson should not have been able to interview for the Pontiac position, and that the only reason she was permitted to do so was because of an illegal racial preference. Plaintiffs-Appellants concede, however, that Robinson received the highest score of all the candidates who interviewed for the Pontiac position, and that the scoring was valid.

Plaintiffs-Appellants assert that allowing Robinson to interview for the Pontiac position violated two prior practices of the Treasury Department's Audit Division. First, the Audit

Division's prior practice was never to re-post positions for transfer if the deadline passed without any eligible candidates seeking the transfer. Rather, if the deadline passed, the position was opened up for promotional interviews. Second, the Audit Division's prior practice also prohibited auditors from interviewing for the same level position at a different location. Auditors were permitted to transfer if they had at least two years of experience and a transfer position was available, but they were not permitted to interview competitively against those seeking a promotion. Plaintiffs-Appellants assert that both of these policies were violated with respect to Robinson's receipt of the Pontiac position: first, when the position was re-posted for transfer, and second, when Robinson was permitted to compete for the position against those seeking promotions.[10] They note in this regard that, although Robinson was eligible for transfer at the time of the second posting of the Pontiac position, at the time of the first posting, which they argue should have been the only posting, Robinson was not eligible for transfer because she had not yet worked two years in her position.

Reviewing Karim's contentions regarding these alleged violations of Audit Division policy, the district court concluded that Karim had raised a genuine issue of material fact with respect to whether the Treasury Defendants selectively enforced their policy regarding re-posting positions for transfer in an effort to invite Robinson to seek transfer based upon her race.[11] We conclude, however, that the district court erred, and a *de novo* review indicates that Karim failed to raise a genuine issue of material fact with

---

[10]As indicated above, Karim did not file an internal appeal regarding the resolution of her grievance.

[11]The district court noted that the decision to allow Robinson to interview for the position was legitimately explained as a reasonable resolution to Karim's grievance.

respect to whether the Defendants' legitimate, non-discriminatory reasons for these employment decisions were a pretext for decisions based on race.[12]

### 1. Prima Facie Case

The parties do not dispute that Karim has met some elements of her *prima facie* case, in that she was qualified for the position she was seeking, that, despite her qualifications, she suffered an adverse employment decision, and that the position was given to a person outside her racial class. As they do with respect to Sutherland's claim, however, the parties dispute whether Karim has satisfied the first prong of her *prima facie* case by setting forth the background circumstances necessary to establish that the Treasury Defendants are the unusual employers who discriminate against the majority. For the reasons set forth above in our discussion of Sutherland's claim, we believe that Karim has raised a genuine issue of material fact with respect to this issue.

### 2. Legitimate, Non-Discriminatory Reason

The Defendants set forth legitimate, non-discriminatory reasons for both the decision to re-post the Pontiac position for transfer and the decision to allow Robinson to interview for the position. Husted alone made the decision to re-post the position for transfer. In his affidavit, he asserts that he made that decision based on the fact that three months had

---

[12]As set forth above, the district court denied the Treasury Defendants' second motion for summary judgment with respect to Karim's claims. The district court subsequently granted the Treasury Defendants' third motion for summary judgment based on their assertion of the "same decision" defense. We do not address the validity of that defense in light of the fact that we affirm the district court's ruling based on Karim's failure to raise a genuine issue of material fact with respect to pretext.

lapsed since the first opening, and he anticipated a number of job openings arising from the promotion of certain employees who had held Auditor Manager 14 positions. In light of these employment realities, he re-posted the position for transfer because he believed that doing so was permissible under the Treasury's written transfer policy, which contained no explicit language prohibiting the Audit Division from re-posting a position for transfer.

Micheal Davis made the decision to allow Robinson to interview for the Pontiac position after he rescinded the transfer as part of the resolution to Karim's grievance. In his affidavit, he states that he resolved Karim's grievance as he did, rescinding the transfer but allowing Robinson to interview for the position, because, as a labor relations officer, he believed that to be the "most reasonable and practical resolution of the matter." In addition, he explains that the Audit Division had

> [an] existing practice of allowing employees to interview for vacancies if they had made themselves eligible as candidates on the employment list from which the position was being filled. Employees interested in transferring could circumvent the "24 month in position" requirement and become a candidate for the vacant position. . . . Thus, Ms. Robinson could have been considered as a transfer "appointment" for the Pontiac position by simply calling Civil Service to have her name placed on the Oakland County employment list.

Thus, the decision to allow Robinson to interview for the position was not only reasonable from a managerial perspective, it was also in line with the Audit Division's transfer policy, even though Robinson had held her Auditor Manager 14 position for less than two full years at the time the transfer position was initially posted.

Based on the foregoing reasoning set forth by Husted and Davis for their employment decisions, we believe that the district court correctly concluded that the Treasury Defendants met their burden of establishing legitimate, non-discriminatory reasons for both employment decisions challenged by Karim.

### 3. Pretext

Karim contends that the Defendants' non-discriminatory reasons for the employment decisions at issue are a pretext for discrimination, and that the decisions were made to favor Robinson based on her race. In support of this position, however, she offers little evidence, but simply restates the fact that both decisions violated prior practice of the Audit Division.

The only purported evidence upon which Karim relies in support of her claim of pretext is a situation that occurred within the Audit Division a number of years ago. Apparently, two female auditors who had been Auditor 12s for less than two years requested to interview for Auditor 12 vacancies in another location so that they could relocate. The two females were told that, although they were eligible to compete for the vacancies under Civil Service guidelines, the interview panel would not award them the positions because they felt that to do so would be to circumvent the transfer policy, which required the women to hold their positions for at least twenty-four months before being eligible for transfer. Karim asserts that this prior situation demonstrates that the decision to allow Robinson to interview for the Pontiac position was contrary to prior practice, and intended to favor Robinson based on her race.

Karim's reference to this prior situation does not raise a genuine issue of material fact with respect to pretext. Although the prior situation indicates that the decision to allow Robinson to interview was in derogation of prior

practice, the Defendants admitted as much in their resolution of Karim's grievance. Indeed, the failure to adhere to prior practice was the basis for the decision to rescind Robinson's transfer. The decision to allow her to participate in the competitive interviews for the position was simply the most fair and logical way to resolve the situation that had been created by the re-posting of the position. Karim's reference to the prior situation does nothing to demonstrate that the reasoning set forth in Davis's affidavit, explaining his resolution of Karim's grievance, was a pretext for discrimination.

Moreover, Plaintiffs-Appellants have offered no evidence, other than the fact of the re-posting itself, that Husted's decision to re-post the Pontiac position for transfer was based on Robinson's race. They have presented no evidence to refute Husted's assertion that he re-posted the position because he did not believe that doing so violated the Audit Division's transfer policy, as no written provision of the policy prohibited such a re-posting, and because he believed that opening the position for transfer would help fill the Division's employment needs at the time.

Karim's arguments with respect to any alleged pretext are based on unsupported speculation. Therefore, we **AFFIRM** the district court's ruling granting summary judgment to the Treasury Defendants with respect to Karim's claims, but on the ground that Plaintiffs-Appellants failed to raise a genuine issue of material fact with respect to whether the Treasury Defendants' proffered reason for their employment decision was pretext.

### D. Remaining Issues

In addition to challenging the dismissal of, or grant of summary judgment to, all of the Defendants-Appellees, Plaintiffs-Appellants challenge the following rulings of the district court: (1) dismissal of the Plaintiffs' claims for

prospective, injunctive relief; and (2) denial of the Plaintiffs' motion for partial summary judgment.  In light of our conclusion that all Defendants-Appellees were entitled to summary judgment on, or dismissal of, the claims brought against them based on the Plaintiffs-Appellants' failure to raise a genuine issue of material fact with respect to pretext, as well as Plaintiffs-Appellants' failure to demonstrate that any governmental entity other than the Department of Treasury was their employer, we need not reach these issues. The foregoing conclusions preclude the possibility that Plaintiffs-Appellants could have been entitled either to summary judgment or any form of relief, injunctive or otherwise.

Therefore, we **AFFIRM** the district court's rulings dismissing the Plaintiffs-Appellants' claims for prospective, injunctive relief and denying the Plaintiffs-Appellants' motion for partial summary judgment.

### III.  CONCLUSION

For all of the foregoing reasons, we **AFFIRM** the district court's rulings granting Defendants-Appellees' motions for summary judgment and motions to dismiss, and denying Plaintiffs-Appellants' motion for partial summary judgment.