[Cite as *Nelson v. Univ. of Cincinnati*, 2016-Ohio-1278.]

| | |
|---|---|
| JOHN RUSSELL NELSON | Case No. 2014-00830 |
| Plaintiff | Judge Dale A. Crawford |
| v. | <u>DECISION</u> |
| UNIVERSITY OF CINCINNATI | |
| Defendant | |

{¶1} This cause came to be heard on a complaint brought by Plaintiff, John Russell Nelson, for race and gender discrimination in violation of R.C. 4112. The case proceeded to trial on the issues of liability and damages on December 14-15, 2015. Plaintiff's post-trial brief was filed on December 24, 2015 and Defendant's post-trial brief was filed on December 28, 2015. The following constitutes the Court's Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

{¶2} Plaintiff, an African-American male, began his employment with Defendant on October 12, 2009, as an Assistant Dean of Administrative Services for Clermont College, which is one of Defendant's regional colleges.

{¶3} On October 19, 2012, Plaintiff was terminated for his conduct in making an unauthorized telephone call to David Cannon (Cannon), the Vice Chancellor for Finance at the Ohio Board of Regents (OBR).

{¶4} By making the call, Plaintiff disregarded the hierarchy at the college and bypassed the authority of Greg Sojka (Plaintiff's supervisor), Kathy Qualls (Senior Vice Provost for Academic Finance and Administrative Affairs), Lawrence Johnson (Provost), and Robert Ambach (Vice President of Financial Affairs).

{¶5} After the call was made to OBR, Margaret Rolff (Assistant Vice President of Government Relations and University Communications) spoke with Cannon, and subsequently shared the information about the call with Ambach and Qualls.

{¶6} Qualls sent an email on September 21, 2012, to Johnson, relaying the information given to her by Rolff.

{¶7} Johnson forwarded the message to Sojka, indicating his displeasure at the circumstances.

{¶8} Although Qualls may have had a brief conversation with Sojka about the incident and while Johnson may have advised Sojka to terminate Plaintiff,[1] the decision to terminate Plaintiff was ultimately Sojka's.

{¶9} Plaintiff's responsibilities were eventually taken over by Maria Keri, a Caucasian female, over six months after Plaintiff's termination.  However, over fifty percent of Keri's duties were different from Plaintiff's and she did not hold the same title.

**CONCLUSIONS OF LAW**

{¶10} R.C. 4112.02 states, in part:

{¶11} "It shall be an unlawful discriminatory practice:

{¶12} "(A) For any employer, because of the race, color, religion, sex, military status, origin, disability, age or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶13} Disparate treatment discrimination has been described as "the most easily understood type of discrimination.  The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin."

---

[1]The Court notes that Johnson did not know Plaintiff and was not aware of his race.

*Teamsters v. United States*, 431 U.S. 324, 335–336 (1977) fn. 15. In a disparate treatment case, liability depends upon whether the protected trait actually motivated the employer's decision. *Hazen Paper Co. v. Biggins*, 507 US. 604, 610 (1993). "Whatever the employer's decision making process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome. *Id.*

{¶14} As a general rule, this Court will not substitute its judgment for that of the employer and will not second-guess the business judgment of employers regarding personnel decisions. *Kirsch v. Bowling Green State Univ.*, 10th Dist. Franklin No. 95API11-1476, 1996 WL 284717 (May 30, 1996). Additionally, in a discrimination case, the Court must examine the employer's motivation, not a Plaintiff's perceptions. *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir.1987). Plaintiff is an employee-at-will and can be terminated at any time for a non-discriminatory reason. *Sutton v. Tomco Machining*, 129 Ohio St.3d 153 (2011). "The cornerstone of this analysis [whether there was discriminatory intent] is whether the employment action is the result of discrimination— not merely whether the action is unfair or the justification questionable." *Price v. Matco Tools*, 9th Dist. No. 23583, 2007-Ohio-5116, ¶ 31. "Even if the reasons are foolish or trivial or even baseless" that fact is not sufficient to justify a finding of discrimination. *Hartley v. Wilson Bell Inc.*, 124 F.3d 887, 890 (7th Cir.1997). Therefore, it is not the Court's responsibility to determine whether Defendant's personnel decision was correct or to determine the content of the call, but rather the Court must determine whether race or gender were factors in the decision to terminate Plaintiff's employment.

{¶15} To establish an employment discrimination claim, a plaintiff is required to either "present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Johnson v. Kroger Co.*, 319 F.3d 858, 864-865 (6th Cir.2003). If there is no direct evidence of discrimination, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973), will apply. Under *McDonnell Douglas*, a plaintiff establishes a prima facie case of race discrimination by establishing that he: 1) was a member of a protected class; 2) suffered an adverse employment action; 3) was qualified for the position held; and 4) that comparable, nonprotected persons were treated more favorably. *Id.* at 802.

{¶16} In reverse-discrimination cases, the first and fourth prongs are modified, requiring Plaintiff to "demonstrate background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority * * * and that the defendant treated differently employees who were similarly situated but were not members of the protected class." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003).

{¶17} Applying *McDonnell Douglas* to Plaintiff's race discrimination claim, it is uncontroverted that Plaintiff, as an African-American male, is a member of a protected class, that he suffered an adverse employment action when he was terminated from his position, and that he was qualified for the position. The only element at issue for Plaintiff's race discrimination claim is whether comparable, nonprotected persons were treated more favorably. With regard to Plaintiff's gender discrimination, the analysis changes slightly as set forth in *Sutherland*. Plaintiff has to establish that background circumstances were present that show Defendant discriminated against the majority.

{¶18} In support of his prima facie case, Plaintiff testified that three Caucasian women received salary increases while his request for a salary equity adjustment was denied. Plaintiff also alleged discrimination based on the premise that he was replaced by Keri. However, Sojka testified that the three women who received salary increases, Mary Sterns, Mae Hanna, and Glenda Neff, all took on substantial, additional responsibilities. Sojka also testified that Keri, the person who ultimately took over Plaintiff's responsibilities, came in under a different title, the Director of Business Affairs, and had two main additional duties—1) the entire human resources function for faculty and administration; and 2) creating the entire program's cost study. Furthermore, Sojka

testified that Keri spent more than fifty percent of her time performing the duties that Plaintiff never performed. Based on this testimony, the Court finds that Plaintiff has not established that comparable nonprotected persons were treated more favorably as required by the *McDonnell Douglas* framework on both his race and gender claim.

{¶19} Nevertheless, assuming that Plaintiff has stated a prima facie case for discrimination, the analysis continues and the burden of production shifts to Defendant to "articulate some legitimate, nondiscriminatory reason for [its action.]" *McDonnell Douglas*, *supra*, at 802. If Defendant succeeds in doing so, then the burden shifts back to Plaintiff to prove that the legitimate, nondiscriminatory reasons offered by Defendant were a mere pretext for discrimination. *Id.* To meet his burden, Plaintiff must submit evidence that an employer's proffered reason (1) had no basis in fact, (2) did not actually motivate the employer's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Knepper v. Ohio State Univ.*, 10th Dist. Franklin No. 10AP-1155, 2011-Ohio-6054, ¶ 12. Under any of the three options, Plaintiff must produce sufficient evidence from which the trier of fact could reasonably reject an employer's explanation and infer that the employer intentionally discriminated against him. *Id.* "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and the discrimination was the real reason." *Crase v. Shasta Beverage*, *Inc.*, 10th Dist. Franklin No. 11AP-519, 2012-Ohio-326, ¶ 21.

{¶20} According to Sojka's testimony, Plaintiff's conduct in making the unauthorized telephone call to Cannon was the reason for his termination. Thus, the Court finds that Defendant has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff. Upon Defendant presenting a nondiscriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to provide evidence that the reason was not merely pretext for discrimination.

{¶21} "[P]retext does not address the correctness or desirability of reasons offered for employment decisions"; rather, "it addresses the issue of whether the

employer honestly believes in the reasons it offers." *Wigglesworth v. Mettler Toledo International, Inc.*, 10th Dist. Franklin No. 09AP-411, 2010-Ohio-1019 (internal citations omitted). "[I]n order to discredit the employer's proffered reason, a plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.*

{¶22} In support of his pretext argument, Plaintiff testified that Qualls made things difficult for him and that he thought Qualls never believed he was qualified for the position. Plaintiff further testified that Qualls falsified pertinent information in her email which was ultimately delivered to Sojka, and that the information contained in the email ultimately led to Plaintiff's termination. However, Sojka testified that Plaintiff was not terminated for poor performance but rather for his conduct in merely making the call to Cannon. More specifically, Sojka stated that he was concerned that the trust and confidence with OBR had been violated. He was surprised and disappointed "that an employee would attempt an end run without [his] knowledge with the Ohio Board of Regents." While there may be some dispute as to the specifics of the call, it is clear that Sojka and Johnson believed that the call itself circumvented the chain of command at the college and that making the call to OBR was inappropriate. Furthermore, although Cannon testified that he could not recall the specifics of the call, he described the call as "unusual" and "awkward." He also testified that he believed the call was so unusual that he discussed the call with Rolff.

{¶23} Based on the foregoing, the Court finds that Defendant's reason for terminating Plaintiff was for making the call to Cannon and not for any discriminatory reason. The Court also finds that the call was unauthorized and inappropriate, and regardless of the content of the call or whether the information was conveyed incorrectly, Plaintiff has failed to show that Defendant's articulated reason for his

termination was merely pretext.   Accordingly, judgment shall be rendered in favor of Defendant.

 

_____
DALE A. CRAWFORD
Judge

[Cite as *Nelson v. Univ. of Cincinnati*, 2016-Ohio-1278.]

| | |
|---|---|
| JOHN RUSSELL NELSON | Case No. 2014-00830 |
| Plaintiff | Judge Dale A. Crawford |
| v. | <u>JUDGMENT ENTRY</u> |
| UNIVERSITY OF CINCINNATI | |
| Defendant | |

{¶24} This case was tried to the Court on the issues of liability and damages. The Court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of Defendant. Court costs are assessed against Plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
DALE A. CRAWFORD
Judge

cc:

Jonathan B. Allison
525 Vine Street, 6th Floor
Cincinnati, Ohio 45202

Eric A. Walker
Lindsey M. Grant
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed February 22, 2016**
**Sent To S.C. Reporter 3/25/16**