**Tonya WILLIAMS, Plaintiff–Appellant,**

v.

**COLUMBUS METROPOLITAN HOUSING AUTHORITY, Defendant–Appellee.**

**No. 02–3930.**

United States Court of Appeals, Sixth Circuit.

Feb. 2, 2004.

Jami S. Oliver, Jami S. Oliver Law Offices, Columbus, OH, for Plaintiff–Appellant.

Robert Garrett Cohen, Anthony C. White, Kegler, Brown, Hill & Ritter, Columbus, OH, for Defendant–Appellee.

Before COLE and CLAY, Circuit Judges; and COLLIER, District Judge.*

OPINION

COLLIER, District Judge.

Plaintiff Tonya Williams ("Williams") brought suit against her employer. Defendant Columbus Metropolitan Housing Authority ("CMHA"), alleging CMHA failed to promote her to the vacated position of Manager of Safety and Crime Prevention on the basis of her gender. The district court granted CMHA's motion for summary judgment, concluding Williams had neither set forth any direct evidence of discrimination nor established the legitimate, nondiscriminatory reasons given by CMHA for not promoting her were a pretext for unlawful gender discrimination For the reasons stated below, we AFFIRM the district court's grant of summary judgment in all respects.

## I. FACTS AND PROCEDURE

Defendant CMHA is a public housing authority created under Ohio Rev.Code § 3735.27, et seq., for the purpose of "provid[ing] safe and sanitary housing accommodations to families of low income." Ohio Rev.Code § 3735.31. CMHA operates, maintains, and manages various housing communities throughout Frankl'n County, Ohio, employing several hundred people, including property managers, clerks, maintenance personnel, and security and crime prevention personnel.

In the fall of 1998, CMHA sought to fill the vacated position of Manager of Safety and Crime Prevention ("SCP Manager"). The SCP Manager coordinates crime prevention and safety programs throughout CMHA, supervises security personnel, coordinates investigations into criminal activity on CMHA properties, and maintains working relationships with local law enforcement. In late August 1998. CMHA posted a notice of the opening internally and advertised the position in the loeal newspaper. Listed qualifications for the job included a bachelor's degree (with a non-mandatory preference for a Criminal Justice major); knowledge of investigative, legal, and safety procedures: and 7–10 years of experience in "the safety/investigative field" (with a preference for prior supervisory experience). The internal job posting set a September 8, 1998, deadline for the submission of applications.

Plaintiff Williams, who is female, applied for the SCP Manager position on September 8, 1998. Williams attended Ohio State University off and on from 1976 until 1998, when she graduated with a dual major in political science and sociology. Williams has worked for CMHA continuously since 1978 and remains employed by CMHA to this day. She began as a Fire Inspector, was promoted to Management Clerk in 1979, Housing Manager in 1983, and Property Manager in 1996, with various minor promotions within these larger classifications along the way.

Williams was not asked for an interview and heard nothing from CMHA until she sent a memo to CMHA's human resources department inquiring about her application on November 4, 1998. Later that day, CMHA sent Williams a letter informing her she had not been selected for the position and indicating CMHA had decided "to continue [its] search for the most qualified candidate." CMHA ultimately hired Robert Walker ("Walker"), a man, to fill the position of SCP Manager. Thirty-two individuals applied for the position of SCP Manager, only three of whom were wom-

* The Honorable Curtis L. Collier. United States District Judge for the Eastern District of Tennessee, sitting by designation.

en. CMHA interviewed four to six applicants, none of whom were women.

Williams brought suit against CMHA on October 12, 2000, alleging she was "equally or more qualified" than Walker for the position and she had been denied the position of SCP Manager on the basis of her sex. CMHA filed a motion for summary judgment, which the district court granted on July 16, 2002. Williams now appeals the district court's ruling.

## II. STANDARD OF REVIEW

The Court reviews *de novo* a district court's order granting summary judgment. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.1997). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issues of material fact exist. *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir.2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323, 106 S.Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994).

## III. ANALYSIS

In order to establish an employment discrimination claim under Title VII, a plaintiff must either "present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Johnson v. Kroger Co.*, 319 F.3d 858, 864–65 (6th Cir.2003). The district court concluded Williams had presented no direct evidence of discrimination and Williams does not challenge this ruling on appeal. Therefore, Williams circumstantial claim must be evaluated using the burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101

S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir.2002). The establishment of a *prima facie* case creates a rebuttable presumption of discrimination, requiring the defendant to articulate some legitimate, nondiscriminatory reason for taking the challenged action. *Id.* at 906. If the defendant is able to satisfy this burden, the plaintiff must then prove the defendant's proffered reason is, in fact, a pretext for unlawful discrimination. *Id.* The burden of proof always remains on the plaintiff. *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir.1996). A defendant bears only the burden of production and not the burden of persuasion. *Anthony v. BTR Automotive Sealing Sys., Inc.*, 339 F.3d 506, 515 (6th Cir.2003). A defendant need not prove a nondiscriminatory reason for not promoting an employee, but rather must only articulate a valid rationale. *Hartsel*, 87 F.3d at 800 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 514, 113 S.Ct. 2742, 2751, 125 L.Ed.2d 407 (1993)).

In order to establish a *prima facie* claim of discrimination based on a failure to promote, a plaintiff must demonstrate (1) he or she is a member of a protected class: (2) he or she applied and was qualified for a promotion; (3) he or she was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions or the position was left open. *See Roh v. Lakeshore Estates, Inc.*, 241 F.3d 491, 497 (6th Cir. 2001); *Allen v. Michigan Dep't of Corrections*, 165 F.3d 405, 410 (6th Cir.1999). Although CMHA maintains Williams has failed to state a *prima facie* case of discrimination, the Court finds it unnecessary to consider this issue since Williams has ultimately failed to establish pretext on the part of CMHA. Therefore, the Court will assume without deciding, as the district court did, that Williams met her initial *prima facie* burden.

CMHA asserts it hired Walker for the position of SCP Manager and rejected Williams's application because Williams had little or no direct security, crime prevention, safety, or investigative experience and Walker was more qualified than Williams. Hiring a more qualified candidate certainly suffices as a legitimate, nondiscriminatory rationale for denying Williams the promotion. Thus, Williams must come forth with sufficient proof from which a jury may reasonably conclude CMHA's proffered reason is a pretext for illegal discrimination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir.1994). A plaintiff carries this burden and presents a submissible case on the credibility of the defendant's explanation if he or she can show by a preponderance of the evidence the proffered reason either (1) had no basis in fact, (2) did not actually motivate the defendant's action, or (3) was insufficient to motivate the action. *See id.* at 1084 (citing *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir.1993)). *See also Seay v. Tennessee Valley* Auth., 339 F.3d 454, 463 (6th Cir.2003). "[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000).

The district court held Williams had failed to provide any evidence of pretext. The district court reasoned (1) there was no evidence indicating CMHA did not hire the best qualified candidate; (2) Williams's *prima facie* showing plus CMHA's failure

to rebut her qualifications did not amount to evidence of pretext; (3) Williams could not establish pretext by questioning the soundness of CMHA's business judgment; (4) the fact Williams was not interviewed was not sufficient to establish gender-based animus; (5) Williams had provided no evidence, statistical or otherwise, to support a disparate impact theory of discrimination; and (6) evidence of an arguably discriminatory statement by a CMHA executive [1] was inadmissible hearsay and could not be considered.

On appeal, Williams contends (1) to the extent CMHA argues it did not hire Williams because she was not qualified, such asserted justification is "absolutely false" and "beyond belief"; (2) to the extent CMHA argues it did not hire Williams because she was not as qualified as Walker, such asserted justification is both false and "technically impossible" because Williams was rejected before Walker ever applied for the job; and (3) CMHA conducted the hiring and interview process in a manner violative of its own internal procedures, policies, and practices.

## A. Williams' Objective Qualifications

Williams first argues that to the extent CMHA argues it did not hire Williams because she was not sufficiently qualified, such asserted justification is "absolutely false" and "beyond belief." Brf. of Appellant at 23–24, 26. Williams contends she was qualified for the position of SCP Manager as a result of her work experience as a Housing and Property Manager. She claims these jobs involved dealings with "problem-causing" residents, dealing directly with the police, going to court hearings, entering "questionable units," walking the communities, requesting investigative materials and police records, and investigating various crimes in her communities, including murder, rape, domestic violence, and drugs. Williams also points out the Department of Safety and Crime Prevention was created in 1989 to relieve Housing and Property Managers of criminal investigation responsibilities. Thus, her work as a Housing Manager from 1983 until 1989 would supposedly have encompassed, at least in part, the sort of matters currently under the purview of Safety and Crime Prevention. Williams claims she assisted ... the creation of some of the forms used by the Department of Safety and Crime Prevention and "developed and wrote the procedures under which the Criminal Investigations Department would operate when it was created in 1989." After the 1989 reorganization. Williams claims she had "overlapping duties with Safety and Crime Prevention Coordinators" and underwent crime prevention training in connection with her job.

CMHA contends Williams has never held a position in which her *primary* responsibility was security, crime prevention, safety, or investigation of criminal activity. CMHA characterizes Williams' duties as relating primarily to inspecting buildings, collecting rent, showing vacant units, handling general tenant relations, and managing maintenance activities. CMHA argues the "criminal investigations" in which Williams claims to have been involved were, in actuality, nothing more than three instances in which CMHA's attorney asked Williams to conduct very limited surveillance of specific units and record comings and goings. CMHA stresses Williams has no education or training in security, crime prevention, safety, or investigative techniques and has grossly inflated whatever

---

1. The district court refers to a "Nathan Miles," but no such person exists within the universe defined by the Joint Appendix. However, a CMHA employee by the name of Darryl Miles was involved in the interview process.

actual work experience she might have in these areas.

Even under Williams' interpretation of her work experience, she only barely meets the minimum qualifications articulated by CMHA for the position of SCP Manager. Moreover, some of the information upon which Williams relies was not included on her application. Notably absent from Williams' application were any references to crime prevention training, going to court hearings, or assisting in the creation and structuring of the Department of Safety and Crime Prevention. Additionally, the application's references to criminal investigations and interactions with law enforcement officials were vague and limited at best. Williams' application does not indicate how many times she investigated criminal complaints, what types of crime she investigated, and exactly what tasks she performed as part of her investigations. This omission is particularly glaring given CMHA's contention Williams' investigative experience amounted only to a few instances of basic surveillance in which she did little more than observe individuals entering and exiting certain housing units.

 An employer is only required to have a good faith belief, formulated through a reasonable reliance on particularized facts, for its employment decision. *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998). Based on the content of her application, it would not have been unreasonable for CMHA to conclude Williams was not sufficiently qualified for the position. That Williams met the minimum qualifications of the job for the purpose of establishing a *prima facie* Title VII case does not necessarily preclude CMHA from addressing the shortcomings in Williams's qualifications in asserting its legitimate, nondiscriminatory rationale. In any event, CMHA's letter rejecting Williams' application did not state she was

being rejected because she was unqualified. Rather, it simply stated CMHA was continuing its search "for the *most* qualified candidate." CMHA ultimately hired Walker, who had seventeen years of experience in crime prevention and safety program coordination, including eight years as a Military Policeman, two years as a private investigator, five years as a "Security Supervisor," and more than eight total years in a supervisory capacity. Thus, CMHA's purported rationale is consistent with both its statements at the time and its ultimate hiring decision and nothing in the evidence available to CMHA at the time or to the Court at the present moment operates to render CMHA's asserted justification objectively "beyond belief." There is little doubt Williams was and is a dedicated and effective employee of CMHA. However, that she has performed well in her current and past positions does not necessarily qualify her for any every position CMHA desires to fill.

### B. Williams' Relative Qualifications

Williams next argues because Walker did not become a candidate for the SCP Manager position until after Williams was rejected, it was technically impossible for CMHA to have compared their relative qualifications and decided Walker was the superior candidate. It is not entirely clear when Walker applied, interviewed, or was hired. Williams contends Walker had not even applied for the position when she was rejected, therefore, to the extent CMHA claims it hired Walker because he was more qualified, its proffered nondiscriminatory reason is disingenuous and technically impossible. CMHA maintains Walker was, in fact, a candidate for the position of SCP Manager when Williams' application was rejected on November 4, 1998. The record contains contradictory evidence as to the timing of Walker's emergence as a candidate, but the issue is ultimately not

material. CMHA's proffered legitimate, nondiscriminatory reason contains two assertions: (1) Williams was not sufficiently qualified and (2) Walker was more qualified.

CMHA could have reasonably concluded Williams' limited experience with criminal investigation and enforcement fell short of what it was looking for to fill position of SCP Manager, even without seeing the application of the individual who was eventually hired. Therefore, even assuming Williams and Walker were never under simultaneous consideration and a reasonable juror could conclude CMHA never directly compared their relative qualifications. CMHA's legitimate, nondiscriminatory reason would still be nonpretextual because, as stated above in Section III.A., Williams has failed to provide any evidence CMHA acted unreasonably in rejecting her application as insufficient.

## C. Other Alleged Evidence of Pretext

Finally, Williams argues CMHA failed to follow its own procedures and hiring practices in filling the SCP Manager position, thus indicating pretext. Specifically, Williams points to CMHA's anti-nepotism policy. Williams argues Walker, as SCP Manager, could potentially be required to investigate his own wife. CMHA's Section 8 Housing Assistance Manager. Generally, an employer's failure to follow its own regulations and procedures, alone, is not sufficient to support a finding of pretext. *See Fischbach v. District of Columbia Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996). In any event, Williams presents no evidence Walker's hiring would even violate CMHA's anti-nepotism policy. The only description of this policy in the record indicates it only prohibits employing an individual in a position where he or she would *report* directly to a relative. The policy does not appear to prohibit CMHA from employing multiple members of the same family nor does it prevent CMHA from employing one family member in a position where he or she could potentially be called upon to *investigate* another. Moreover, Williams has offered no proof suggesting the rules were applied in any discriminatory way.

Williams also contends various inconsistencies in the deposition testimony of CMHA employees regarding the interviewing and hiring process are evidence of pretext and bad faith. Williams cites the varying accounts from members of the interviewing committee regarding the number of people interviewed, who conducted the interviews, who was present during particular interviews, how applications were reviewed, and who was responsible for the ultimate decision to hire Walker. The interviews appear to have been conducted by some combination of four individuals: Robert Thomas, Steve Havens, Darryl Miles, and Evan Harper, Harper, CMHA Human Resources Manager, does not recall seeing any applications, conducting any interviews, or approving the hiring of Walker. This may have been because Harper left CMHA at some point in November 1998, but, nevertheless. Thomas, Miles, and Walker all recall Harper being present at Walker's interview. Thomas claims three interviews were conducted. Miles claims to remember six interviews over two days, but states Thomas was present for only one day of interviews. Thomas claims he and Miles each looked through the applications, flagged those they liked, and turned the applications back over to Harper to select the exact candidates who would be interviewed. Miles denies having reviewed any applications before participating in the interviews. Nothing in the statements cited by Williams indicates any dishonesty or bad faith. At best, such inconsistencies evidence a lack of organization and/or fuzzy memories. Although one can reasonably infer pretext from an employer's inconsis-

tent explanations for a challenged employment decision, *see Appelbaum v. Milwaukee Metro. Sewerage Dist.,* 340 F.3d 573, 579 (7th Cir.2003), the inconsistencies cited by Williams relate entirely to matters of process and have no bearing on CMHA's reasons for not promoting Williams.

Williams also claims both Thomas and Assistant Human Resources Manager, Karen Perkins, stated in their depositions Williams was qualified for the position and should have been interviewed, but later contradicted such statements in sworn affidavits accompanying CMHA's summary judgment motion. Brf. of Appellant at 13–14, 28. However, such allegations are not supported by the record. In his deposition. Thomas only stated he recalled having mentioned to Harper a preference they interview all internal applicants. Similarly, Perkins merely stated she had no recollection of whether Williams met the minimum qualifications for the SCP Manager job. Thomas' and Perkins' subsequent affidavits stating they considered Williams unqualified for the position are not necessarily inconsistent with their respective deposition testimonies.

## IV. CONCLUSION

Because Williams has failed to show CMHA's legitimate, nondiscriminatory explanations for its actions are pretextual, we AFFIRM the district court's grant of summary judgment in favor of CMHA in all respects.