*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0440p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DAWN WHITE,

*Plaintiff-Appellant,*

*v.*

COLUMBUS METROPOLITAN HOUSING AUTHORITY,
*Defendant-Appellee.*

No. 03-4219

>

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 01-00836—George C. Smith, District Judge.

Argued: November 5, 2004

Decided and Filed: November 14, 2005

Before: MOORE and GIBBONS, Circuit Judges; MILLS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Mark S. Granger, GRANGER & BIGGERMAN, Columbus, Ohio, for Appellant.
Robert Garrett Cohen, KEGLER, BROWN, HILL & RITTER, Columbus, Ohio, for Appellee.
**ON BRIEF:** Mark S. Granger, GRANGER & BIGGERMAN, Columbus, Ohio, for Appellant.
Robert Garrett Cohen, John Lowe IV, KEGLER, BROWN, HILL & RITTER, Columbus, Ohio, for
Appellee.

GIBBONS, J., delivered the opinion of the court, in which MILLS, D. J., joined. MOORE,
J. (pp. 11-12), delivered a separate opinion concurring in the judgment.

---

## OPINION

---

JULIA SMITH GIBBONS, Circuit Judge. Dawn White, an employee of Columbus
Metropolitan Housing Authority ("CMHA"), applied and was rejected for the position of CMHA's
Manager of Safety and Crime Prevention. White brought suit against CMHA alleging that she was
not selected for the position because of her gender, in violation of Title VII, 42 U.S.C. § 2000e *et
seq.* and Ohio Revised Code § 4112.02. She also asserted a claim of intentional infliction of
emotional distress under Ohio law. The district court granted CMHA's motion for summary

---

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by
designation.

judgment, finding that (1) White failed to present any evidence of direct discrimination; (2) White failed to present evidence sufficient to meet her *prima facie* burden using circumstantial evidence; (3) CMHA had proffered a legitimate, nondiscriminatory reason for failing to hire White; and (4) White failed to show that CMHA's proffered reason was pretextual.

For the following reasons, we affirm the district court's grant of summary judgment in favor of CMHA.

## I.

CMHA is a public housing authority created pursuant to Ohio Revised Code § 3735.27 *et seq.* for the purpose of "provid[ing] safe and sanitary housing accommodations to families of low income." Ohio Rev. Code § 3735.31. CMHA operates and manages housing communities in Franklin County and employs several hundred employees to manage them. Among these employees, CMHA employs its own safety and crime prevention personnel to ensure a safe environment within its communities.

In late August of 1998, the position of Manager of Safety and Crime Prevention for CMHA became available. The Manager of Safety and Crime Prevention coordinates crime prevention and safety programs throughout CMHA, supervises the CMHA security personnel, investigates any allegations of criminal activity on CMHA property, and maintains relations with local law enforcement agencies. CMHA posted a notice of the job opening internally and also advertised the position in the local newspaper. The job description listed the specific qualifications sought for the position, including a bachelor's degree (with a stated preference for Criminal Justice majors), knowledge of investigative, legal, and safety procedures, seven to ten years of experience in the safety/investigative field with prior supervisory experience, and strong oral and written communication skills. The internal job posting set the application deadline as September 8, 1998.

White, an employee of CMHA, submitted an application for the position on September 3, 1998. White graduated from Bowling Green State University in 1978 with a major in sociology and a minor in psychology. White had been employed by CMHA since 1991 as a Safety and Crime Prevention Coordinator. In response to White's application, CMHA sent her a letter on November 4, 1998, indicating that she was not chosen for an interview, as the hiring committee had "decided to continue [the] search for the most qualified candidate for the position." CMHA ultimately hired Robert Walker to fill the position of Manager of Safety and Crime Prevention. Walker was an external candidate with more than seventeen years of experience in crime prevention and safety program coordination as a military police officer in the United States Army, a private investigator, and in various positions, including security supervisor, at Faith Missions, Inc., a homeless shelter.

On August 30, 2001, White filed a complaint against CMHA, claiming that CMHA unlawfully discriminated against her on the basis of her sex in violation of Title VII, 42 U.S.C. § 2000e and Ohio Revised Code §§ 4112.02 and 4112.99. White also asserted a state law claim for intentional infliction of emotional distress. Both CMHA and White filed motions for summary judgment. The District Court for the Southern District of Ohio granted defendant's summary judgment motion and denied plaintiff's summary judgment motion. The district court found that White failed to produce evidence sufficient to establish a case of sex discrimination using direct evidence. The district court also found that White's claim of sex discrimination under the *McDonnell-Douglas* test used for circumstantial evidence failed because it found that Walker was better qualified than White as a matter of law, thus making it impossible for White to meet the fourth element of the *McDonnell-Douglas prima facie* case requirement. Further, the district court found that CMHA had produced a legitimate non-discriminatory reason for its decision not to hire White for the position, and found that White was unable to satisfactorily rebut CMHA's proffered reason. The district court, having ruled against White on her federal claims, declined to exercise

supplemental jurisdiction over her state law claims. On September 5, 2003, White timely filed a notice of appeal.[1]

## II.

This court reviews a district court's decision granting summary judgment *de novo*. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Thacker v. City of Columbus,* 328 F.3d 244, 252 (6th Cir. 2003) (quoting Fed. R. Civ. P. 56(c)). A dispute over a material fact is "'genuine'" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the district court's decision granting summary judgment, this court draws all justifiable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A plaintiff can establish a claim of sex discrimination under Title VII by producing either direct or circumstantial evidence of discrimination. *DiCarlo*, 358 F.3d at 414. "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Once the plaintiff has produced credible direct evidence, the burden shifts to the employer to show that it would have taken the employment action of which the plaintiff complains even in the absence of discrimination. *Id.*

When a plaintiff proceeds on her claim using circumstantial evidence, she bears the burden of establishing a *prima facie* claim of discrimination under the tripartite *McDonnell-Douglas* framework. *See DiCarlo*, 358 F.3d at 414 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once the plaintiff establishes a *prima facie* claim, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the employment decision at issue. *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003). If the defendant is able to meet this burden, the plaintiff must establish that the defendant's stated reason is mere pretext for its true discriminatory motives. *Id.*

## A.

On appeal, White claims that the district court erred in finding that she failed to produce any direct evidence of discrimination as a matter of law. White urges that two comments made by two different members of the interview committee satisfactorily establish a claim of direct discrimination.

First, White cites the statement that Darryl Miles, a member of the interview committee, allegedly made to White in responding to her inquiry as to why she was not selected for the position. In this conversation, Miles allegedly stated that "[the hiring committee] wanted a grass roots guy . . . [a]nd that Mr. Walker interviewed well." White asserts that the phrase "grass roots guy" establishes a claim of direct discrimination, because the statement indicates that the hiring

---

[1] Another female internal employee who applied and was not selected for the position of Manager of Safety and Crime Prevention, Tonya Williams, also sued CMHA for sex discrimination under Title VII. The district court granted CMHA's motion for summary judgment in that case on July 16, 2002. A panel of the Sixth Circuit affirmed the district court's grant of summary judgment in all respects in an unpublished opinion on February 2, 2004. *Williams v. Columbus Metro. Hous. Auth.*, 90 Fed. Appx. 870 (6th Cir. 2004).

committee was looking exclusively for a male candidate to fill the position. The district court determined that, in this context, the word "guy" was gender-neutral.

We find that Miles' alleged statement, standing alone, does not constitute direct evidence of discrimination. Isolated and ambiguous comments are insufficient to support a finding of direct discrimination. *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993). The comment at issue occurred after Walker had already been selected to fill the position. This comment, which is fairly innocuous under any set of circumstances, does not appear to be a statement indicating that the committee was biased toward men or unwilling to consider a female to fill the position, as White claims. Rather, this statement, allegedly made in the course of Miles' explanation to White of why Walker was selected for the position, appears to be a description of Walker himself. The comment could easily be understood as one reason that Walker was particularly suited to fill the position. Because the evidence, if believed, does not "require[] the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions," *see Jacklyn*, 176 F.3d at 926, the evidence does not suffice to establish a claim of sex discrimination using direct evidence.

White identifies a second comment which she asserts provides direct evidence of her claim of sex discrimination. White points to the deposition testimony of James Profitt, an employee of CMHA. According to Profitt, Bob Thomas, a member of the hiring committee, encouraged Profitt to apply for the position of Manager of Safety and Crime Prevention. Profitt, who had not previously considered applying for the position because he neither was interested nor felt qualified for the position, stated that Thomas encouraged him to apply because "he felt that [Profitt] was a good man and [Thomas] didn't want to hold a good man back." White argues that this statement is "in and of itself . . . direct evidence of CMHA's intent to fill the managerial position with a male."

This comment, as well, fails to constitute direct evidence of sex discrimination. First, as the district court noted, this casual comment made to an employee incorporating a "relatively common phrase," cannot, in context, "reasonably be interpreted as an indication of an intent to discriminate on the basis of sex." As the district court noted, the comment is ambiguous. *See Phelps*, 986 F.2d at 1025 (noting that ambiguous comments do not constitute direct evidence of discrimination). Further, even if the comment did in some way evidence discriminatory intent, it fails to constitute direct proof of sex discrimination because "[t]he critical inquiry [in a sex discrimination case] is whether gender was a factor in the employment decision *at the moment it was made*." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 (1989). White cannot establish any link between this comment and the decision of the hiring committee not to hire her for the position. As such, the statement is not direct evidence of sex discrimination against White.[2]

## B.

With regard to White's claim of discrimination using circumstantial evidence, the district court found that (1) White failed to produce sufficient evidence to meet her *prima facie* burden of sex discrimination, (2) CMHA produced a legally sufficient reason for deciding not to hire White, and (3) White was unable to refute the CMHA's proffered reason by establishing that the reason was pretextual. On appeal, White claims that the district court erred in its determination in several ways.

---

[2] White argues that this statement made by Thomas should be afforded extra weight because of Thomas's alleged history of sexual harassment against female employees. It is uncertain that these allegations of past sexual harassment of other female CMHA employees would be admissible for purposes of proving gender discrimination in White's case. However, even assuming that evidence of such allegations is admissible, it does not succeed in strengthening White's direct evidence claim of sex discrimination. Because these allegations are entirely divorced from CMHA's decision not to hire White for the position, they cannot constitute direct evidence of sex discrimination with respect to White's claim. As such, they should not be considered by this court in examining Thomas's statement to Profitt.

**1.**

In order to survive summary judgment on a claim of sex discrimination using circumstantial evidence, the plaintiff must produce evidence sufficient to meet her *prima facie* burden under the four-prong test initially developed in *McDonnell Douglas*. In a failure to promote employment discrimination case, the Sixth Circuit has modified the elements of the test to fit the specific context. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000). Under *Nguyen*, which is the governing precedent, a plaintiff with a discrimination claim based on a failure to promote must demonstrate that (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied. *Id.* at 562-63. *See also Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 410 (6th Cir. 1999) (employing above-cited test in the failure to promote context); *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996) (same); *Brown v. Tenn.*, 693 F.2d 600, 603 (6th Cir. 1982) (same).

The district court employed the test set forth in *Farmer v. Cleveland Public Power*, 295 F.3d 593, 603 (6th Cir. 2002) and *Roh v. Lakeshore Estates, Inc.*, 241 F.3d 491, 497 (6th Cir. 2001), which requires that the plaintiff in a failure to promote discrimination case show that: (1) the plaintiff is a member of the protected class; (2) the plaintiff applied for and was qualified for the desired position; (3) she was considered but not selected for the position; and (4) the position either remained open or was given to a less qualified non-member of the protected class.[3] *Farmer*, 295 F.3d at 603; *Roh*, 241 F.3d at 497. While the test of *Farmer* and *Roh* seems much like the *Nguyen* test, its fourth prong differs and invites a close comparison of the plaintiff's qualifications and those of the individual who actually received the position.

White urges this court to decline to follow the *Farmer/Roh* test, and rather to follow the test employed in *Anthony v. BTR Automotive Sealing Systems, Inc.*, 339 F.3d 506, 515 (6th Cir. 2003). In a footnote in the *Anthony* opinion, the court acknowledged the test employed in *Roh* and *Farmer*, but "decline[d] to adopt the "less-qualified" language used in *Farmer* and *Roh* because it deviates from prior precedent." *Anthony*, 339 F.3d at 515 n.10. The *Anthony* test and the *Farmer/Roh* test employ the same first three prongs, but the fourth prong of the *Anthony* test instead requires that the plaintiff prove that "a similarly-situated person who was not in the plaintiff's protected class received the job." *Id.* at 515. The articulation of the test in *Anthony*, while purportedly a return to the *Nguyen* standard, also uses slightly different language and imports the "similarly situated" language frequently used in other *prima facie* case contexts into the failure to promote test.

We agree with the *Anthony* court that the test employed in *Farmer* and *Roh* deviates from prior precedent and therefore should not be used. *See Habich v. City of Dearborn*, 331 F.3d 524, 530 n.2 (6th Cir. 2003) ("When an opinion of this court conflicts with an earlier precedent, we are bound by the earliest case."); *Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001) (same). We find, however, that *Nguyen* sets forth the proper standard and that, to the extent that it differs from the *Anthony* test, *Nguyen*, the earlier precedent, represents the law of the circuit. In any event, the district court erred in relying on the *Farmer/Roh* test.

---

[3] The *Farmer/Roh* alternative means of satisfying the fourth prong–by showing that the position remained open–is an apparent reference to *McDonnell Douglas Corp.*, 411 U.S. at 792, in which the Supreme Court established that the fourth prong of the prima facie case for discrimination may also be satisfied by showing "that, after [the plaintiff's] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Id.* at 802. While this alternative means remains available, it was inapplicable in *Nguyen* and in *Farmer* and *Roh* and is inapplicable here. Thus, we do not discuss it further in our analysis.

White, as a woman, is a member of a protected class, and thus satisfies the first element. White applied for the position of Manager of Safety and Crime Prevention of CMHA, and CMHA does not dispute that she was minimally qualified for the position. Thus, White satisfies the second element of her *prima facie* case. White was considered and ultimately was not selected for the position, thus satisfying the third element.[4]

As for the fourth prong, White contends that this court may not compare her qualifications with those of Robert Walker, the person ultimately selected for the position. Rather, White asserts that all that was required of her to satisfy the fourth prong of her *prima facie* burden was a showing that the position went to someone outside her protected class. Because Walker is male, White contends that she has satisfactorily satisfied her *prima facie* burden. Relying on the *Anthony* "similarly situated" prong, White contends that because she and Walker "both applied for the same position and were evaluated by the same decision makers," they possessed similar qualifications and thus White has presented enough evidence to satisfy her *prima facie* burden.

White's contentions are incorrect. Under *Nguyen,* it is insufficient for a plaintiff in a failure to promote sex discrimination case merely to point to a man who received the job in satisfying the fourth prong. Further, White's assertion that she satisfies her *prima facie* burden because she is similarly situated to Walker by virtue of the fact that they applied for the same position and their applications were reviewed by the same committee fundamentally misconceives the concept of the fourth prong of the *prima facie* requirement. We hold that in order to satisfy the fourth prong of the *prima facie* burden in a failure to promote case, it is incumbent upon the plaintiff to establish that she and the non-protected person who ultimately was hired for the desired position had similar qualifications. *See Williams v. Columbus Metro. Hous. Auth.*, 90 Fed. Appx. 870, 873 (6th Cir. 2004); *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003); *Nguyen*, 229 F.3d at 562-63.

In holding that such a comparison is necessary in order for White to meet her *prima facie* burden, we are mindful of the fact that prior Sixth Circuit case law warns against conflating the first (*prima facie* case) and second (articulation of a legitimate non-discriminatory reason) steps in the *McDonnell-Douglas* analysis. *See Cicero v. Borg-Warner Auto., Inc*., 280 F.3d 579, 584-85 (6th Cir. 2002); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000). White contends that this precedent precludes this court from engaging in a comparison of her qualifications with those of Walker, because she argues that doing so would be considering CMHA's proffered legitimate non-discriminatory reason at the first rather than the second step of the *McDonnell Douglas* framework in violation of this principle. However, the case law indicates that courts engage in impermissible consideration of the defendant's proffered legitimate non-discriminatory reason during the first step of the *McDonnell Douglas* analysis when they cite the defendant's proffered reason in finding that the plaintiff is not qualified for the position and thus has failed to meet the *second* prong of the *prima facie* analysis.[5] In considering whether a plaintiff is qualified and thus meets the second prong of her *prima facie* burden, the case law is clear that "[a] court must evaluate whether a plaintiff established his qualifications independent of the employer's proffered nondiscriminatory reasons for discharge . . . [and] be careful not to conflate the distinct stages of the *McDonnell Douglas* test." *Cicero*, 280 F.3d at 585 (citing *Cline*, 206 F.3d at 660-61).

---

[4] While White argues that she was not considered for the position because she was not granted an interview and neither the human resources employees who initially screened applications for minimum qualifications nor the members of the interviewing committee could remember reviewing her resume, we agree with the district court's reasoning that "[White] was considered at some stage of the hiring procedure or she would have not received the rejection letter."

[5] In light of the fact that CMHA concedes that White is minimally qualified for the position, White is able to meet the second prong of the test without an independent review of White's qualifications.

The *Cicero/Cline* directive regarding the court's considerations of the plaintiff's qualifications in connection with the second prong of the *prima facie* burden does not preclude this court from examining the qualifications of both Walker and White in determining whether White has satisfied the fourth prong of her *prima facie* case. Just as the case law directs us to conduct a review of the plaintiff's qualifications independent of the employer's proffered non-discriminatory reason in considering the second prong, the case law is equally clear that, in order to satisfy the fourth prong of her *prima facie* burden, the plaintiff must show that the position went to a person outside the protected class with similar qualifications.[6] *See, e.g., Nyugen*, 229 F.3d at 562; *see also Collins v. Tower Auto., Inc.*, 56 Fed. Appx. 226, 227 (6th Cir. 2003) (noting that the district court was in error in relying on the defendant's proffered reason in finding the plaintiff to be unqualified, as doing so conflated the second element of the *prima facie* case with the requirement that the employer bring forward a legitimate reason for the adverse employment action, but finding that the district court's improper reliance did not change the outcome, because the plaintiff "failed to establish that any *comparable non-protected person* was treated better than he was") (emphasis added); *Anthony*, 339 F.3d at 516 (comparing the qualifications of the plaintiff and the person who was selected for the position in a failure to promote case in determining that plaintiff had met her *prima facie* burden); *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002) ("Under the fourth prong, because this is a failure to promote case, plaintiff must show that the employer treated differently employees who were similarly situated but not members of the protected group.") (citation and internal quotation marks omitted).

Some comparison between Walker and White is therefore necessary in considering the fourth prong of the *prima facie* case. Engaging in such a comparison does not impermissibly conflate the two stages of the *McDonnell Douglas* test, for just as the court must independently review the plaintiff's qualifications in determining whether the plaintiff has met the second prong of her *prima facie* burden, so too does the court conduct an independent review of the relative qualifications of the plaintiff and the person selected for the position based on the evidence presented in order to determine whether the plaintiff has satisfied the fourth prong of her *prima facie* burden.

As the district court notes, a true comparison of White's qualifications with those of Walker reveals that White is not as qualified as Walker for the position, and therefore, White fails to meet the fourth prong of her *prima facie* burden. Walker had seventeen years of experience in security, investigation, safety and crime prevention, as compared with White's seven years of experience. Before she started working at CMHA, White had no experience in security, investigation, safety or crime prevention. In contrast, Walker had served as a military police officer, investigator, and

---

[6] Although it seems unlikely that application of the *Farmer/Roh* test or *Anthony*'s "similarly situated" formulation would actually affect the result in most failure to promote cases, use of the *Nguyen* test insures that some comparison of qualifications will be made in analyzing the fourth prong, but not the sort of close comparison that might include consideration of the employer's evaluation of subjective traits or other details about why the non-protected person was in fact selected over the plaintiff. *See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 ( 11th Cir. 2005) (noting that a plaintiff need only show that she satisfied the employer's objective qualifications to meet her *prima facie* burden, and that any consideration of the employer's subjective criteria is not relevant until the later stages of the *McDonnell Douglas* framework, because "[a] contrary rule, under which an employer's subjective evaluation could defeat the plaintiff's initial *prima facie* case, cannot be squared with the structure and purpose of the *McDonnell Douglas* framework); *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1194 (10th Cir. 2000) ("[S]ubjective qualifications[] are more properly considered at the second stage of the *McDonnell Douglas* analysis and a plaintiff's failure to meet such qualifications cannot be used to defeat the plaintiff's *prima facie* case."); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) (noting that "the question of whether an employee possesses a subjective quality, such as leadership or management skill," is more appropriately considered in the later stages of the *McDonnell Douglas* inquiry); *Lynn v. Regents of Univ. of Cal.*, 656 F.2d 1337, 1344 (9th Cir. 1981) ("In our view, objective job qualifications are best treated at step one and subjective criteria, along with any supporting evidence, are best treated at the later stages of the process. To do otherwise would in many instances collapse the three step analysis into a single initial step at which all issues would be resolved. This would defeat the purpose underlying the *McDonnell Douglas* process.").

supervisor of security for Faith Mission, Inc., a homeless shelter, prior to being selected for the position at CMHA. Unlike White, whose only investigation experience consisted of three or four domestic or divorce cases, each lasting between one to three weeks, prior to working for CMHA, Walker had conducted countless criminal investigations during his jobs as a military police officer for the Army, private investigator, and at the homeless shelter. White's job duties at CMHA do not appear to include any supervisory role for other personnel, and she had only performed a supervisory role in connection with a grant project she coordinated, which likewise did not involve supervision of security personnel. By contrast, Walker was responsible for training incoming investigators at the private investigation firm and supervised a staff of twelve to fourteen employees at the homeless shelter. Walker also researched and developed a comprehensive security manual while working at the homeless shelter. Comparing the qualifications of White and Walker, it is clear that Walker has superior experience in material and relevant respects, and therefore, White and Walker cannot be considered similarly qualified for the position, as required to meet the fourth prong of White's *prima facie* burden.[7]

**2.**

Even if White had been able to satisfy her *prima facie* burden, her claim still fails because CMHA has produced a legitimate non-discriminatory reason for failing to hire White as the Manager of Safety and Crime Prevention. Once the plaintiff meets her *prima facie* burden, the burden then shifts to the employer to produce a legitimate non-discriminatory reason for failing to hire the plaintiff for the position sought. *Sutherland*, 344 F.3d at 614-15; *Anthony*, 339 F.3d at 515. CMHA has asserted that it chose not to hire White because it decided to hire a more qualified candidate. The district court found that CMHA had met its burden of production on this point.

On appeal, White argues that, because no one can remember reviewing her application, her application was never reviewed or considered by anyone at CMHA. If no one reviewed her application, White asserts, then CMHA could not possibly have concluded that Walker was more qualified, because no comparison of the qualifications of the two candidates was ever made. White also argues that CMHA cannot argue that Walker was better qualified than White because White was rejected prior to Walker's submission of his application for consideration.

White's arguments are unavailing. While it is true that members of the human resources department could not recall seeing White's application, it does not logically follow, contrary to White's assertions, that no one at CMHA reviewed her application. It is unclear whether her application was forwarded to the interviewing committee, as no one on that committee remembered seeing her application. However, from these facts, there is no basis for concluding, as White urges this court to do, that her application was not reviewed and considered before it was rejected. Thus, White's argument that CMHA's proffered reason is false because her application was not considered fails.

Similarly, White cannot succeed on her argument that CMHA's proffered reason is false because her application was rejected prior to Walker's submission of his application. The identical argument was raised and rejected by this court in *Williams v. Columbus Metropolitan Housing Authority*, a case brought by another female CMHA employee based on her non-selection for the

---

[7]White asserts that she is a more qualified candidate than Walker because she "has no criminal background (. . . unlike Mr. Walker)." The "criminal background" White refers to arose out of a charge of criminal assault filed against Walker when he was working at the homeless shelter. A man accused Walker of hitting him with a flashlight. Ultimately, Walker pled guilty to a disorderly conduct charge. Despite this charge, there is no genuine issue of fact that White's qualifications were not similar to Walker's. Moreover, the disorderly conduct charge cannot be considered in evaluating pretext, because CMHA was apparently unaware of the disorderly conduct charge at the time that it hired Walker.

position of Manager of Safety and Crime Prevention. *Williams*, 90 Fed. Appx. at 875-76. As this court in *Williams* points out, it is not entirely clear when Walker's application was initially submitted. *Id.* at 875. However, even assuming that White and Walker were not under consideration at the same time, it was reasonable for CMHA to conclude that while White was minimally qualified, her qualifications did not rise to the level of quality CMHA for which CMHA was searching in a new Manager of Safety and Crime Prevention. *See id.* at 876.

As noted above, a review of Mr. Walker's qualifications reveals that he was a very strong candidate for the position, with over seventeen years of relevant experience. As such, we find that the district court was correct in holding that CMHA's reason–that Walker was the most qualified candidate–is sufficient to satisfy CMHA's burden of production in presenting a legitimate, non-discriminatory reason for deciding not to hire White.

**3.**

Once CMHA produces a legally sufficient reason for failing to hire White, the burden shifts back to White to show that the nondiscriminatory reason is pretextual and the true motivation for the decision was discriminatory. *See Gibson v. City of Louisville*, 336 F.3d 511, 513 (6th Cir. 2003). A plaintiff can make this showing in one of three ways: (1) by showing that the proffered reason had no basis in fact; (2) by showing that the proffered reason did not actually motivate the employer's conduct, or (3) by showing that the proffered reason was insufficient to warrant the challenged conduct. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003).

White does not specify which of these three options she primarily relies on in arguing that CMHA's proffered reason was pretexual, instead urging that this court view all of the facts together in determining whether CHMA's reasons were pretextual. In support of her contention of pretext, White reviews each step of the hiring process, claiming that such a review reveals that the true reason that she was not hired was not because Walker was the most qualified candidate, as CMHA contends, but rather because CMHA wanted a man to fill the position. According to White, once the position became available, Bob Thomas, the Director of Property Management, who would have to work closely with the Manager of Safety and Crime Prevention, set out to ensure that a man would fill the position. CMHA, largely through the efforts of Thomas, who allegedly had previously sexually harassed various female employees at CMHA, circumvented several of CMHA's policies with respect to hiring. According to White, CMHA acted improperly in a variety of ways, including (1) accepting Walker's application after the deadline, (2) ignoring White's application, (3) violating CMHA's policy of preferring internal candidates,[8] (4) violating CMHA's nepotism policies,[9] (5) failing to complete a cover sheet for Walker, (6) lying about which candidates were selected for an interview, and (7) neglecting to do a background check on Walker, thereby remaining unaware of Walker's past guilty plea for disorderly conduct. White also cites Darryl Miles' comment that the interviewing committee was looking for a "grass roots guy" to fill the vacancy, discussed in the section regarding direct evidence, as evidence of pretext.

---

[8]The policy states: "In cases where the qualifications of all applicants are deemed by CMHA to be equal, and efficient operations will not be affected, vacancies will be filled with existing CMHA personnel." Because CMHA did not consider White and Walker to be similarly qualified, and because, as discussed above, this conclusion is reasonable, White's allegation that this policy was violated is incorrect.

[9]White alleges that CMHA's decision to hire Walker violates CMHA's nepotism policies because Walker's wife also works at CMHA, and should a charge of criminal conduct arise against her, Walker would be in charge of any resulting investigation as Manager of Safety and Crime Prevention. CMHA states that in the event an investigation of Mrs. Walker becomes necessary, some other CMHA employee would handle the investigation.

White's arguments in support of her allegations of pretext do not permit an ultimate finding of discrimination. First, the allegations involving Thomas's alleged history of sexual harassment are entirely unrelated to the instant case and are qualitatively different from White's claim of sex discrimination in hiring. Assuming without deciding that evidence of these allegations would be admissible in the instant case, such evidence does not support White's contention that CMHA's reason in choosing Walker to fill the position over her because he was the most qualified candidate was pretextual. Second, White's arguments that CMHA circumvented its own policies are unpersuasive, both because these departures from CMHA's policies are either minor–e.g., failure to complete a cover sheet–or are insufficiently established–e.g., the violation of the nepotism policy, the violation of the policy preferring internal, equally qualified candidates. In any event, an employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext. *See Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996); *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995). Third, the "grass roots guy" comment, discussed *supra*, is too ambiguous to support a finding of discrimination.

Ultimately, even if all of these allegations are true, they do not permit a finding that CMHA's stated reasons were merely a cover for a discriminatory motive, as required by Sixth Circuit case law. The most White can show, in viewing the evidence in the light most favorable to her, is that her application was not given as much attention as she would have liked. However, she has not presented sufficient evidence for this court to conclude that the true reason behind the lack of attention is the fact that she is a woman.

Because we affirm the district court's grant of summary judgment in favor of CMHA on White's Title VII claims, we also affirm the district court's decision to decline to exercise summary judgment on her state law claims.

### III.

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of CMHA.

---

**CONCURRING IN THE JUDGMENT**

---

KAREN NELSON MOORE, Circuit Judge, concurring in the judgment. I agree with the ultimate judgment reached by the majority, but I am troubled by the path taken to reach that result. While I would grant summary judgment in favor of CMHA, I disagree with the majority's determination that Ms. White failed to establish a prima facie claim of discrimination based on the fourth "similar qualifications" prong of the prima facie standard in failure-to-promote cases. I believe that the detailed examination of White's and Walker's qualifications that the majority conducts at the prima facie case stage in Part II.B.1 of its opinion places too heavy a burden on a plaintiff at stage one of the *McDonnell Douglas* framework, and should be reserved for its analysis at stages two and three of the framework.

The majority's analysis of the fourth prong required to establish a prima facie failure-to-promote case seems to suggest that a plaintiff must establish that he or she has the exact same qualifications as the non-protected class member who ultimately received the job in order to satisfy the prima facie standard. This places upon a plaintiff a burden that not only would be unrealistically difficult for a plaintiff to meet, but also is contrary to our precedent. As we noted in *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651 (6th Cir. 2000), the prima facie requirement in discrimination cases is not intended to be an onerous burden upon plaintiffs but instead a burden which is easily met. *Id.* at 660 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Moreover, the requirement is not "meant to stymie plaintiffs, but simply serves to 'bring the litigants and the court expeditiously and fairly to the ultimate question.'" *Id.* (quoting *Burdine*, 450 U.S. at 253). Based on this language, while a general weighing of White's and Walker's qualifications is required during the prima facie stage to determine whether they have similar qualifications, a more rigorous comparison of the two candidates such as the majority conducts in stage one is better reserved for stages two and three of the *McDonnell Douglas* framework. This is especially true in a case such as this, where the employer asserts as its non-discriminatory reason for failing to promote the plaintiff that it chose to hire a candidate it considered more qualified.

I believe that White presented sufficient evidence to permit a reasonable trier of fact to conclude that White and Walker were similarly qualified for the position and thus established her prima facie case. Admittedly, White's and Walker's qualifications were not identical, but White is not required to establish that she possessed identical qualifications as Walker. Instead, White need only demonstrate that she and Walker had similar qualifications, *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000), which I believe she has done. The record reveals that each candidate presented both strengths and weaknesses. White's undergraduate degree in sociology specializing in criminology was more relevant to the job description than Walker's undergraduate degree in political science. In comparison, however, Walker had more years of experience in security, investigation, safety, and crime prevention than did White. On the other hand, White had worked for the CMHA as Safety Coordinator for over seven years, and had performed many of the tasks required of the Safety Manager. White's years of experience with CMHA could be weighed more heavily given that she was uniquely familiar with the nature of the organization and requirements of the position. Thus a reasonable trier of fact could consider White and Walker as possessing similar, albeit not identical, qualifications, which is all that *Nguyen* requires of a plaintiff at the prima facie stage.

While White may be able to make out a prima facie case, she cannot show that CMHA's decision to hire Walker was pretextual. CMHA produced a legitimate, non-discriminatory reason for failing to hire White, namely that Walker was more qualified for the position. Although the two

candidates' backgrounds are similar enough to satisfy the prima facie requirement, a reasonable trier of fact could conclude that given Walker's extensive experience in security, investigation, and safety and crime prevention, he was more qualified than White to serve as Manager of Safety and Crime Prevention. The burden then falls upon White to present a genuine issue of material fact that this justification was a pretext for discrimination, which she has been unable to show. I therefore concur in the judgment that CMHA was entitled to summary judgment.